# SUFFOLK COUNTY.*

JAMES B. THAYER *vs.* WILLIAM W. WELLINGTON & others.

A will duly attested, giving a certain sum of money to a person in trust, to appropriate the
same in such manner as the testator may, by any instrument in writing under his hand,
direct and appoint, and an appointment by a separate paper signed by the testator, but
not attested in conformity to the statute of wills, declaring the appropriation and naming
the beneficiary, do not create a valid bequest in favor of such beneficiary.

The fact that the legacy is appropriated by the unattested instrument to a public charity
does not give to it any greater legal effect, no charity being declared or indicated in the
will.

There is no distinction in this commonwealth between a lapsed devise of real estate and a
lapsed bequest of personal estate, in reference to the question whether or not it passes
under a general residuary clause in the will.

A lapsed devise or a lapsed bequest will pass under a general residuary clause, unless the
will shows a clear intention to the contrary.

BILL OF REVIVOR by the administrator *de bonis non* with the
will annexed of the estate of Edmund T. Dana, to revive a bill

* GRAY, J. did not sit in the cases for Suffolk county.

in equity brought by the original administrator *de bonis non* with the will annexed, praying for the instructions of this court as to the proper discharge of his duty under one clause of said will.

At the hearing before the chief justice it appeared that the twenty-third clause of the will of the testator, which was dated on the 10th of March, 1858, was as follows: " I give to the said Edmund T. Hastings and to William W. Wellington of said Cambridge, physician, and to the survivor of them, fifteen thousand dollars, in trust, to appropriate the same in such manner as I may, by any instrument in writing under my hand, direct and appoint." By another clause of the will, the testator gave to his executor the sum of eleven thousand dollars, in trust, to pay the income thereof to a nephew during life, and authorized the purchase of an annuity for the benefit of said nephew; and directed the capital, if not devoted to the purchase of an annuity, to be considered, upon the death of the nephew, as a part of the rest and remainder of the estate. By another clause he gave to his executor one thousand dollars, in trust, to appropriate the same in such manner as he might, by any instrument under his hand, direct and appoint; and in default of such appointment, the same was to be considered a part of the rest and remainder of his estate. The following paper, dated on the same day, was also executed by the testator: " To Edmund T Hastings and William W. Wellington, or whosoever else may execute the trust created by the twenty-third clause of my will. The sum of fifteen thousand dollars bequeathed by the said twenty-third clause is to be paid over, if and whenever my trustees or trustee shall deem it expedient to do so, to the city of Cambridge, to be held by the said city in trust as an entire fund, the income thereof to be appropriated annually forever to the increase and support of the library of the Cambridge Athenæum; provided, however, that if and whenever my said trustees or trustee shall be of opinion that it is not expedient that the said sum of fifteen thousand dollars should be so appropriated, the same to be paid over to my heirs at law; and provided further, that the said capital sum be paid over either to said city of Cambridge o

to my heirs at law within three years from my decease." The testator died in May 1859, and the will was duly proved. On the 16th of February 1861 the said Hastings and Wellington addressed a note to the city council of Cambridge, expressing their present intention of paying the said sum to the city when-ever it should be paid to them by the executor; and on the 3d of April following the two branches of the city government resolved to accept the same on the conditions expressed in the will. Edmund T. Hastings was appointed executor, and all the rest and remainder of the estate and property, real and per-sonal, were devised to him in trust, to be paid ultimately to the children of Francis Dana. The executor died in August 1861, without having taken any steps to make the payment under the clause in question; and in June 1862 the original bill was filed, seeking the instructions of this court. The parties defendant were Mr. Wellington, the city of Cambridge, and the children of Francis Dana. Evidence was introduced to show that the Cambridge Athenæum was a public charity.

The case was reported for the determination of the whole court, and argued in November 1863.

*B. R. Curtis & C. T. Russell,* for the city of Cambridge. The passing of the estate is claimed in this case, not under the paper declaring the power, but under the will. No party takes anything under the appointment, but under and directly from the will, through the appointment. Sugden on Powers (8th Lond. ed.) 136. *Middleton* v. *Crofts,* 2 Atk. 661. *Osgood* v. *Breed,* 12 Mass. 532. *Heath* v. *Withington,* 6 Cush. 497. This is not a reservation of the power to make a will, but a reserva-tion of the power to direct the execution of a trust created by a will. Such a reservation is valid, and an appointment under it may be sustained, although not testamentary. *Inchiquin* v. *French,* 1 Cox, 1; S. C. Ambl. 32. *Crook* v. *Brooking,* 2 Vern. 50, 106. *Metham* v. *Devon,* 1 P. W. 529. *Smith* v. *Attersoll,* 1 Russ. 266. The case is analogous to those where debts and legacies have been charged upon the real estate. It is well settled that these, together with rent charges created in the same manner, are valid. See *Brudenell* v. *Boughton,* 2 Atk. 268,

273; *Hyde* v. *Hyde*, 1 Eq. Cas. Ab. 409; *Masters* v. *Masters*, 1 P. W. 421; *Wyndham* v. *Chetwynd*, 1 Burr. 423; *Habergham* v. *Vincent*, 2 Ves. Jr. 213. Under the *St.* 1 Vict. *c.* 26, and the decisions under it, a paper like that in the present case cannot be read to the court, and of course can receive no effect. But this is not because of the language as to wills. The next section (§ 10) goes on to prohibit making an appointment, unless by will. The recent decisions, therefore, may well be sustained. None of the earlier English cases present the least embarrassment. The language of the Rev. Sts. *c.* 62 § 6, is satisfied by the will produced here. The commissioners' report shows that it was intended to enact what had been decided in *Winslow's Appeal*, 14 Mass. 421. Report of Com. on Rev. Sts. *c.* 62 § 4. The commissioners intended these words to be applicable to real estate. The legislature added the words as to personal estate.

If this power was not duly executed, a court of equity may aid the defective execution. It is not the case of a defective power. It would have been certainly valid, if attested. The defect, if any, was in the execution. The *St.* of 43 Eliz. *c.* 4, concerning charitable uses, is in force here; and the Cambridge Athenæum is a charity. An appointment in favor of a charity may be executed conditionally. This case falls within the principle of *Sayer* v. *Sayer*, 7 Hare, 388, and *Innes* v. *Sayer*, 3 Macn. & Gord. 606. In that case, the witnesses were required by the deed; and in this, if witnesses were required at all, it is by statute. But this is immaterial, because this question was never set up; and in *Wilkes* v. *Holmes*, 9 Mod. 485, it is expressly declared that the statute of frauds has nothing to do with it.

The intention of the testator may also be carried out by treating this as an absolute bequest to Hastings and Wellington personally, in the trust or confidence that they will appropriate it as he shall direct. 2 Story on Eq. §§ 1069, 1070. *Sale* v *Moore*, 1 Sim. 534. *In re Pennock*, 20 Penn. State R. 268.

*A. H. Fiske & H. G. Parker*, for the residuary devisees. A testator cannot in his will create for himself a power to dispose

of his property by a future instrument, not executed as a will or codicil. *Briggs* v. *Penny,* 3 DeG. & Sm. 525. *Johnson* v. *Ball,* 5 DeG. & Sm. 85. *Adlington* v. *Cann,* 3 Atk. 151. *In re Sotheron,* 2 Curteis, 831. *Ferraris* v. *Hertford,* 3 Curteis, 468. *Wagstaff* v. *Wagstaff,* 2 P. W. 258. *Marlborough* v. *Godolphin,* 2 Ves. Sen. 76. 1 Williams on Executors, (4th Amer. ed.) 86. Hill on Trustees, 64. Lewin on Trusts, 36. It has always been held necessary, in order to give testamentary effect to a paper referred to in a will, that the reference should be distinct, so as to exclude the possibility of a mistake, and that the paper should be already executed. *Smart* v. *Prujean,* 6 Ves. 565. *Wilkinson* v. *Adam,* 1 Ves. & B. 445. *In re Durham,* 1 Notes of Cases, 365. *Collier* v. *Langebear,* Ib. 369. *In re Smartt,* 4 Notes of Cases, 38. *In re Edwards,* 6 Notes of Cases, 306. Both these requisites are wanting here. If these objections are not decisive, no trust is created by words which leave it discretionary with the trustee whether or not to apply the gift to the designated purpose. 2 Story on Eq. §§ 1069, 1070, and cases cited. Lewin on Trusts, 81, and cases cited. Hill on Trustees, 66. The paper of February 16, 1861, is not an execution of a trust, but only signified a present intention, which might be changed.

DEWEY, J. The present bill is filed by the administrator with the will annexed of the estate of the late Edmund T. Dana, who asks the direction of this court as to his duty in the execution of his trust as to the payment of any money in discharge of a certain provision in the 23d clause of the will, which is in the words following: " I give to the said Edmund T. Hastings and to William W. Wellington, and to the survivor of them, fifteen thousand dollars, in trust, to appropriate the same in such manner as I may, by any instrument in writing under my hand, direct and appoint." The testator, by a separate instrument, bearing on its face the same date as the will, but not attested by any witness, or shown to have been executed in the presence of any, or to have been signed on the same day, except so far as the date written thereon would lead to that inference, did direct and appoint as follows: " To Edmund T. Hastings and

William W. Wellington, or whosoever else may execute the trust created by the twenty-third clause of my will. The sum of fifteen thousand dollars bequeathed by the said twenty-third clause is to be paid over, if and whenever my trustees or trustee shall deem it expedient to do so, to the city of Cambridge, to be held by the said city in trust as an entire fund, the income thereof to be appropriated annually forever to the increase and support of the library of the Cambridge Athenæum; provided, howevei, that if and whenever my said trustees or trustee shall be of opinion that it is not expedient that the said sum of fifteen thousand dollars should be so appropriated, the same to be paid over to my heirs at law; and provided, further, that the said capital sum be paid over, either to said city of Cambridge or to my heirs at law, within three years from my decease."

This paper, it is alleged, was placed by said Dana in the hands of said Edmund T. Hastings, but at what time does not appear. Hastings and Wellington, on the 16th of May 1861, signified in writing their intention of paying the said sum of money to the city of Cambridge, whenever it should be paid to them by the executor of the will.

Upon these facts, it is contended on the part of the residuary devisees that by the twenty-third clause of the will nothing passed to the city of Cambridge, it not being named as a legatee, and that it was not competent for the testator by a duly executed will to create or reserve to himself a power to declare testamentary bequests by another instrument to be signed by himself, but not attested by witnesses, as required by the statute regulating wills.

The power of transmitting property by will is a power to be exercised solely under our statute law. The legislative authority has seen fit to regulate the exercise of this power by precise and clear provisions. By those provisions, as found in the Rev. Sts. *c.* 62, § 6, and Gen. Sts. *c.* 92, § 6, it is declared that " no will [with certain exceptions which are now immaterial] shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing and signed by the testator, or by some person in his presence

and by his express direction, and attested and subscribed in the presence of the testator by three or more competent witnesses." These provisions are express in their terms, and prescribe a rule from which this court cannot depart, although its application in particular cases may defeat the actual intention of a person as to the disposition of his property. The practical benefits of such provisions have been fully acknowledged by the long continuance of statutes requiring them as to devises of real estate, and the general extension of them at a later period to wills of · personal property.

A similar view of this subject prevails in England, where the *St.* of 1 Vict. *c.* 26, seems to be designed and effectually framed to make the provision requiring a certain number of witnesses to a will to be in effect one that should actnally embrace all cases of bequests claimed under a will, and exclude all reservation of power on the part of the testator to extend the provisions of a will by an instrument not executed as required by the statute of wills.

It is true that the provisions of that statute are somewhat broader than those of our own statute, and it is by the latter that the present case is to be adjudicated. But we think that under a similar statute to that which has existed here since the enactment of the Rev. Sts. in 1836, requiring an attestation by three witnesses of the execution of wills of real or personal estate, the English courts would not have sustained a provision in a will, that the particular beneficiary should be declared by the testator in a subsequent and independent instrument, not executed in the form prescribed by such statute. · While the law permitted legacies of personal property to be given without any attestation of witnesses, and by loose and informal papers, the courts were disposed to give effect to a bequest of personal property by an instrument not duly attested as a will, notwithstanding the existence of a will previously made and executed in conformity to the statute. But under our statute requiring attestation by three witnesses in cases of personal bequests as well as of devises of real estate, no instance has occurred in

which we have sanctioned any departure from the requirement that all bequests must be made by a will duly attested.

The *St.* of 1 Vict. *c.* 26, has put an end in England to all attempts by testators to create by an attested will a power to charge by a separate instrument, not duly attested, legacies upon their estates. 1 Jarman on Wills, (4th Amer. ed.) 131. As already remarked, it will be found that, prior to that statute, it had been held that where, by a will duly attested, the testator had charged his land with the payment of debts and legacies, that is, where a devise of land was made subject to the payment of legacies, a personal bequest given by an instrument not duly attested according to the statute, was a valid legacy, and chargeable upon the estate. In this state of the law, it was urged that it would follow from this course of decisions that a person might, by means of a will duly executed, secure to himself the power to make a further disposition of his lands by a written instrument, not duly attested as a will, declaring the devisees. To this it was answered that if a man might, by a will duly attested, devise his land upon such trust as he should appoint by any other instrument, it would in effect amount to a repeal of the statute in respect to the solemnities of testamentary dispositions of land. A man would have nothing to do on his coming of age but to devise his whole real estate to some nominal person, upon such trust as the testator should in writing thereafter appoint, and thus he might at any time thereafter make a testamentary disposition of his estate, without conforming to the ceremonies required by the statute. Fearne's Cas. & Op. 435. 6 Cruise Dig. (Greenl. ed.) tit. xxxviii. *c.* 5, §§ 59, 60. The view thus stated, denying that any authority could be reserved by the testator to declare and create new devisees by an unattested instrument, when the devise was one within the statute, was sustained in *Habergham* v. *Vincent*, 5 T. R. 92: S. C. 2 Ves. Jr. 204; *Rose* v. *Cunningham*, 12 Ves. 29, and *Johnson* v. *Ball*, 5 DeG. & Sm. 85.

In 2 Washburn on Real Prop. 696, the rule upon this subject is stated to be, that a testator cannot by his will reserve a power to dispose of an estate at a future time, by an instrument not

executed as required by the statute, so that it may take effect under his will. The doctrine of the New York courts is to the like effect. In *Langdon* v. *Astor*, 3 Duer R. 477, it was said by Duer, J. " that a testator cannot by will create for himself prospectively a power to revoke any disposition of property in his will, by an instrument not properly attested." The ruling of the court of appeals in the same case was equally strong. 16 N. Y. 9. In *Thompson* v. *Quimby*, 2 Brad. (N. Y.) 449, it was held that a will cannot reserve a power to give, by an instrument not executed as a will.

We find no authority in any decision of this court for sustaining a bequest made under such reserved power of future declaration by the testator as to the nature of the legacy and the person for whose benefit it is given, and we cannot but feel that holding a devise or bequest thus created to be legal would be in direct contradiction both of the letter of the statute and of the purposes intended to be secured by its enactment. Unless we refuse to sanction a bequest of this character, the statute becomes a dead letter as to all who choose to disregard it. It would only be necessary to make a mere naked devise, duly attested by three witnesses, to some individual, to hold the same wholly in trust for such persons as the testator should thereafter direct and appoint, and then, by an instrument not executed in the presence of witnesses, the testator might create his legatees as his caprice might suggest. The language of this court in *Tucker* v. *Seaman's Aid Society*, 7 Met. 204, was, " that the law requires a will to be executed in the presence of three witnesses, and with other solemnities calculated to insure correctness and guard against mistake and imposition ; and without this precaution every act and instrument, purporting to give property, real or personal, by will, is inoperative and void."

We are restrained by the statute, and by the course of judicial decisions upon statutes of like character, from giving effect to a legacy declared and given to a legatee by an instrument not duly attested as a testamentary disposition of property. The result is, therefore, that the instrument signed by Edmund T. Dana declaring that the sum of $15,000 bequeathed by the

twenty-third clause of the will under consideration, does not operate to create a valid bequest in favor of the city of Cambridge, and cannot be enforced as such.

The view thus taken of the present case does not exclude in all cases a reference to other documents or instruments for the purpose of giving effect to a will. A testator may refer expressly to a paper already executed, and describe it with such particularity as to incorporate it virtually into the will, or he may refer to deeds and other instruments, or monuments, or existing facts, to which reference may be had in construing his will. *Habergham* v. *Vincent,* 2 Ves. Jr. 228. *Smart* v. *Prujean,* 6 Ves. 560. The distinction is a very obvious one. In the case last cited, the purpose of the testator as to the particular legatee and the character of the legacy is fully settled. Such reference leaves nothing ambulatory, and excludes the idea of an unsettled purpose and a design to leave anything open as to the person who shall be the legatee. But if his purpose is not definitely settled at the time of executing his will, and is to be fashioned and moulded by future events which may affect his mind, such future determination to make one a legatee cannot be allowed to have any legal effect, unless by the execution of a codicil or a subsequent will, in accordance with the legal requirements of a testamentary instrument.

It is further urged that, although the instrument signed by Mr. Dana directing the appropriation, and naming the city of Cambridge as the beneficiary, may be defective as a will or codicil, by reason of its not being duly attested, yet this court may sustain the intended legacy, it being given to a charitable use, and to be dealt with as a public charity. No doubt a court of equity will deal liberally with a public charity. It will do so in supplying the want of a proper trustee, and in aiding the defective execution of a power of appointment, or an error in the general description of the beneficiary. But the difficulty in the present case is, that no public charity is established or shown to exist under the will of Mr. Dana. There is nothing therein to raise the slightest presumption of a public charity. The clause in the will declared a mere naked trust of a sum of money

which the testator reserved the right to appropriate in such a manner as he might subsequently direct and appoint. It would have been as competent, under this provision, to appropriate it to any one of his kindred as to the city of Cambridge. It is only by recurring to the instrument not duly attested that any allusion is found to a public charity, or that the city of Cambridge is declared to be a beneficiary. The diffiulty here lies too deep to be removed even by a court of equity. It is the absence of any legal instrument creating a public charity, and not the defective execution of a power of appointment which has been legally authorized by a will.

Nor can we adopt the suggestion made in behalf of the city of Cambridge, that effect may be given to the supposed object of this charity by holding the bequest to be an absolute one by the testator of a sum of money to Hastings and Wellington personally, in the confidence that they would appropriate it as he should thereafter request. The words of the clause do not authorize such a construction to be given to it. The bequest has on its face language directly contradictory to it. The $15,000 were given to Hastings and Wellington in trust, " to appropriate the same in such manner as I may, by any instrument in writing under my hand, direct and appoint." It was not the intention of the testator, under this clause in the will, to make any present appropriation of the sum named therein, or to clothe the trustees with power so to do.

In the opinion of the court, the 23d clause of this will, with the unattested instrument signed by Mr. Dana, declaring the appropriation of the sum of $15,000 to the city of Cambridge, and the assent of said Hastings and Wellington to the payment of the same, do not create a valid bequest to the city of Cambridge.

If any question exists between the residuary devisees and the heirs at law, as to the right to this sum, that question is not properly before us, for want of proper parties.

After the foregoing decision had been mace, the plaintiff obtained leave to amend his bill oy making the heirs at law

parties. Francis Dana, one of the heirs at law, appeared and submitted his rights to the determination of the court. Mary E. Dana, another of the heirs at law, appeared and claimed her share of the $15,000. The other heirs at law appeared and filed an answer setting forth that, if the court should decree that the sum in controversy must be paid to the heirs at law, they should hold the same in trust for the city of Cambridge, as nearly as might be in the manner indicated by the will and memorandum of the testator. It was agreed at the hearing that the testator's personal estate amounted to not less than $20,000, and his debts did not exceed $2000. The case was reserved by *Chapman*, J. for the determination of the whole court.

*A. H. Fiske & H. G. Parker*, for the residuary devisees, cited *Prescott* v. *Prescott*, 7 Met. 146; *Clapp* v. *Stoughton*, 10 Pick 463; *Brigham* v. *Shattuck*, Ib. 306; *Hayden* v. *Stoughton*, 5 Pick. 528; Gen. Sts. c. 92, § 4.

*G. S. Hale*, for Mary E. Dana. The amount of property required for this legacy must be considered as real estate, and should go to the heirs. 1 Jarman on Wills, (4th Amer. ed.) 587, *et seq.* and cases cited. This is clearly the rule established by the English decisions, and should prevail here. The Gen. Sts. c, 92, § 4, are not inconsistent with it. See *Pearmain* v. *Twiss*, 2 Gif. 130; *Eddels* v. *Johnson*, 1 Gif. 22; *Ballard* v. *Goffe*, 20 Pick. 252, 256, 258; *Hayden* v. *Stoughton*, 5 Pick. 528, 536.

Even if the above view does not prevail, the residuary clause will not in this case include the bequest in controversy, because the testator did not so intend. *Easum* v. *Appleford*, 5 Myl. & Cr. 56. *Cambridge* v. *Rous*, 8 Ves. 12, 25. Whenever a will shows that the testator did not intend to include in a residuary bequest any more than a certain residuum, a lapsed bequest will not pass by it. See *Davers* v. *Dewes*, 3 P. W. 40; *Wylie* v. *Wylie*, De Gex, Fisher & Jones, 410; *Enohin* v. *Wylie* 10 H. L. Cas. 1; *Upjohn* v. *Upjohn*, 7 Beav. 59; *Ommaney* v. *Butcher*, Turn. & Russ. 260; *Ash* v. *Ash*, 9 Law Times, (N. S.) 673; *Bland* v. *Lamb*, 2 Jac. & W. 399, 404. In this case, it is plain that the testator did not mean to dispose of his whole property by the will. He intended to reserve the right to

dispose of $15,000 afterwards. He thus limited the residue. If he showed a clear intent thus to reserve the right to dispose of this sum, the fact that his subsequent attempt to dispose of it proved ineffectual is immaterial. His intent was shown by other clauses, in which he provided that certain legacies should, in certain events, be a part of the rest and remainder of his estate ; and by the instrument in writing left by him, in which he provides that the $15,000 should go to his heirs at law if not appropriated for the Athenæum.

*J. Willard, Jr.,* for Francis Dana, submitted the case without argument.

DEWEY J. The original bill filed by the administrator with the will annexed having been so amended as to make the heirs at law of the testator parties defendants thereto, we are now called upon to decide as between them and the residuary devisees, as to whom the $15,000 named in clause 23d of the will shall be paid. Shall it pass to the heirs at law as undevised estate, or to the executor as residuary devisee, holding the same in trust for the persons named in the residuary clause.

We commence this inquiry with the rule of law acknowledged everywhere, that, in a will of personal estate, a general residuary bequest carries to the residuary legatee all void legacies, all lapsed legacies, all that is not disposed of to others, including in this last class what is not legally disposed of so as to pass to the person intended as the object of the testator's bounty The cases to this effect are numerous. We shall only refer to the following: *Hayden* v. *Stoughton,* 5 Pick. 537 ; *James* v. *James,* 4 Paige, 115; *Greene* v. *Dennis,* 6 Conn. 292; *Cambridge* v. *Rous,* 8 Ves. 12; *Rennell* v. *Abbott,* 4 Ves. 802; *McLeod* v. *Drummond,* 17 Ves. 167.

The doctrine of the English courts, and the American courts generally, has been that a different rule was to apply in case of devises of real estate. The reason assigned was, the different operation of a will upon personal and real estate ; that, as to the former, the will operated upon all personal estate held by the testator at the time of his death, whereas the testator could only devise the real estate held by him at the time of making

the will. Undoubtedly the greater importance attached to rea. estate in England had its effect in leading the courts to pro‑ tect, as far as possible, the heir at law from being deprived of his inheritance in the real estate of his ancestor. But the ground put forth and relied upon as warranting the distinction thus taken between personal legacies and devises was that first mentioned.

With us, all ground for any such distinction has long since been taken away. Our whole system, since the enactment of the Rev. Sts. *c.* 62, § 3, has been to carry out the principle that devises of real estate and legacies of personal estate were to be placed substantially upon the same footing, as to the extent of the power to devise, and the formalities required in the execu‑ tion of a testamentary instrument. In distinction from the law of earlier times, the Rev. Sts. *c.* 62, § 6, have required that wills of personal as well as real estate shall be executed in the pres‑ ence of three witnesses. No less safeguards against undue influence or fraud are thrown around testaments of personal estate than of real estate ; and the rights of the heir are equally protected as to each.

The effect of this change, and its application to a case like the present, are fully and directly stated by Mr. Justice Wilde, in delivering the opinion of the court in *Prescott* v. *Prescott,* 7 Met. 141. After stating generally that the foundation for the distinction that had been taken between the cases of legacies of personal property and those of devises of real estate, in the particulars we have alluded to, has been removed by Rev. Sts. *c.* 62, § 3, he adds : " This provision seems to remove the dis‑ ti iction between real and personal estate, so that now all legacies and devises pass to the residuary devisee." The case of *Blaney* v. *Blaney,* 1 Cush. 107, affirms the principle that such change has been thus made, and applies it to that case, as justi‑ fying a departure from the English rule of holding a residuary devise to be a specific devise.

This being so, it becomes unnecessary to consider whether, in the event of a failure to create a personal legacy, which with other legacies was to be paid by and realized from the sale of

real estate, the executor being authorized by the will to sell for
that purpose, such legacy would, under the English rule before
referred to, be dealt with as a devise or a legacy.

It is, however, contended that, independently of all distinc-
tions as to this matter as between legacies of personal estate
and devises of real estate, it is always an open question
whether the testator has by other parts of his will so clearly
indicated his intention to exclude the sum thus given as a legacy
from the residuary clause that it cannot attach thereto. We
take the rule to be that a general residuary clause passes all
the estate of the testator not otherwise disposed of, unless it is
manifestly contradictory to the declared purpose of the testator,
as found in other parts of the will. There must be a clear in-
tention that in no event it shall pass to the residuary devisee.
The various cases cited in behalf of the heirs at law, in which
the courts have found such clear and manifest intention to ex-
clude certain property from the residuary clause, fail to satisfy
us of its existence in the present case. Here was no intention
expressed by the testator to dispose of a part of his estate by
a future codicil. He supposed that by the words used in the
23d clause of the will he had with the aid of the unattested
instrument made a valid legacy. It is true that he was mis-
taken in that, as respected the effect that could in law be given
to that clause of his will. That he was in error in this has been
held by this court, and the facts show nothing more than a case
where the testator has failed to use proper words to give effect
to his purpose to give a legacy. In all these cases of lapsed
or void legacies, or a legacy that fails for want of using proper
language to create the same, or to designate the legatee, all of
which are uniformly held to pass to the residuary devisee, the
testator had no purpose in his mind at the time of executing his
will to pass such an estate to the residuary devisee. " It is not
necessary that the testator's mind should be active in including
it." *Goodright* v. *Marquis of Downshire*, 2 B. & P. 600.

The contrary intention of the testator spoken of in the books,
as that which will prevent such legacy going to the residuary
devisee, is something more than the fact that the testator sup

posed that he had made a valid legacy to some one of a portion of his estate, but which the court held void and inoperative. In this will the residuary clause is expressed in the broadest terms, " all the rest and remainder of my estate and property, real and personal."

It was said by Shaw, C. J. in the case of *Brigham* v. *Shattuck*, 10 Pick. 309, " It is not necessary, in order to give effect to such a clause, that the testator should have foreseen precisely how his will would operate, or what property, in the contingencies which might happen, would pass by it." In *Hayden* v. *Stoughton*, 5 Pick. 539, it was said by Putnam J., " The law allows the residuary legatee to take whatever shall eventually turn out not to be disposed of, whether it arise from accident or design." In *James* v. *James*, 4 Paige, 115, it was held that in a will of personal estate not only what is not disposed of to others, but also what is not legally disposed of so as to pass to the person intended, passes by the residuary clause. In case of failure of a designed legacy, " no matter how, the devisee shall have the benefit of it." *Kennell* v. *Abbott*, 4. Ves. 803.

These general principles, applicable with us equally to a legacy of personal property or a devise, forbid our yielding to any argument drawn from the fact that the testator did not contemplate that so large an estate would pass to the residuary devisee. Beyond what will always exist where there is a failure to carry into effect the purposes of the testator, as in cases of lapsed and void legacies, and attempted legacies that fail for want of legal forms and apt words to create them, we perceive nothing in the present case to indicate any purpose that this residuary devisee should not take all that had not been legally disposed of to others. The result is, therefore, that the heirs at law take nothing by the failure of the 23d clause of the will to create a valid bequest to the city of Cambridge of the sum therein named.

The entire surplus remaining, after paying all the legacies given by the will, will be held for the benefit of the residuary devisees.