In re Estate of Patrick J. Sexton, deceased.

Kate M. Keeler, Appellee, v. The Merchants' Loan and Trust Company, Executor, et al., Appellants.

Gen. Nos. 15,428, 15,552.

1. APPEALS AND ERRORS—*when person not party may appeal.* The widow of the deceased, though not a party to the proceedings against his estate in the probate court to obtain the allowance of a claim, has an appealable interest by virtue of the statute which authorizes an appeal by her.

2. ADMINISTRATION OF ESTATES—*when allowance of bequests as claims erroneous.* If a will make bequests by reference to notes made in favor of the beneficiaries and payable after death, it is error to enter judgment on such notes as claims, inasmuch as so doing operates to give to such bequests the preferential rights of claims.

3. WILLS—*how testamentary gifts cannot be made.* Testamentary gifts cannot be made in the form of unattested promissory notes.

4. WILLS—*what essential to valid bequests the amounts of which are fixed by reference.* In order that bequests the amounts of which are to be determined by promissory notes may be valid and enforceable it must appear (1) that the will at the time of its execution and formal attestation was complete; (2) that the will contained within itself a statement of the testator's intentions; (3) that the notes which measured the amount bequeathed were in existence at the time the will was made and be referred to in the will in such terms as to indicate their then existence; (4) that the will referred to such notes in such terms as to exclude from its description any instruments or papers thereafter made; and (5) that the notes are so identified and referred to as to constitute the measure of such bequests. *Held,* in this case, that the language of the will was not sufficient to warrant extrinsic evidence to make certain the amounts, etc., of the several notes, none of which were produced.

Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded with instructions. Opinion filed May 16, 1911.

**Statement by the Court.** This proceeding involves a claim of one Kate M. Keeler against the estate of Patrick J. Sexton, deceased, which she filed in the Probate Court, where it was disallowed. Upon her appeal to the Circuit Court of

Cook County a judgment was entered in her favor for $24,-191.78, and costs, to be paid in due course of administration. From that judgment The Merchants' Loan & Trust Company, the executor of Sexton's will, appealed to this court, as also did the widow of Mr. Sexton.

The same controversy was presented in the matter of eight other separate claims against the estate, which were severally disallowed in the Probate Court, but upon appeal to the Circuit Court, judgments were entered in favor of the respective claimants, from which several judgments separate appeals were taken by the executor of Sexton's will and the widow of the deceased. By order of this court the appeals in the matter of these nine separate claims were consolidated for hearing upon one set of abstracts and briefs, and the abstracts and briefs filed in this cause were ordered to stand as and be taken and considered as the abstracts and briefs in all of said causes. The several claims are as follows:

| Name of Claimant. | Claim. | Appellate Court Gen. No. and Term No. | Appellate Court Gen. No. and Term No. Mrs. Sexton's Appeal. |
|---|---|---|---|
| Helen McKeon as administratrix of the Estate of Eliza Reilly, deceased, | $24,191.78 | 15,420–259 | 15,556–379 |
| Mary McAnrow, | 24,191.78 | 15,421–260 | 15,550–373 |
| Katie McAnrow, | 12,095.89 | 15,422–261 | 15,551–374 |
| Susie McAnrow, | 12,095.89 | 15,423–262 | 15,557–380 |
| Eliza B. Reilly, | 12,095.89 | 15,424–263 | 15,553–376 |
| Lucinda Reilly, | 12,095.89 | 15,425–264 | 15,549–372 |
| John J. Reilly, | 6,047.95 | 15,426–265 | 15,555–378 |
| Thomas W. Reilly, | 6,047.95 | 15,427–266 | 15,554–377 |
| Kate M. Keeler, | 24,191.78 | 15,428–267 | 15,552–375 |

These claims were heard together in the Probate Court and in the Circuit Court respectively. The two separate appeals as to each claim have been consolidated. The claims of the nine several claimants have not been consolidated, except for the purpose of the hearing, but the record is the same in each case, except as to names and amounts of the respective claims,

and the numbers of the suits. Of these several claimants Eliza Reilly, Mary McAnrow and Kate M. Keeler were sisters of the deacesed; while Katie McAnrow, Susie McAnrow, Eliza B. Reilly and Lucinda Reilly were nieces, and John J. Reilly and Thomas W. Reilly were nephews, of the deceased.

Though the widow, Anna L. Sexton, was not a party of record to the proceedings in the courts below, yet because the several judgments were against the estate, as claims, she had an appealable interest, under Chapter 3, Section 124 R. S..

The testator, Patrick J. Sexton, died on October 28, 1903, leaving a will dated June 26, 1902, which was duly admitted to probate in the Probate Court of Cook County on December 1, 1903. In this will The Merchants' Loan and Trust Company was designated as executor thereof.

The deceased left him surviving his widow, Anna L. Sexton, his son, Thomas O. D. Sexton, then about twenty-one years of age, and a son, Patrick Joseph Sexton, Jr., then about nine years of age, as his only heirs at law. He also left surviving his brother, John M. L. Sexton, and three sisters, Kate M. Keeler, Mary McAnrow and Eliza Reilly, the latter of whom died shortly after the death of the testator. The various nieces and nephews above named also survived the testator.

By the terms of the Second Paragraph of the will, testator gave to his wife, Anna L. Sexton, all such proportion and interest in his estate, both real and personal, as she would be entitled to under the laws of the State of Illinois, in force at the time of his death. In addition, he gave her the use of a certain homestead as long as she should remain his widow.

The Third Paragraph of Mr. Sexton's will reads as follows:

"ARTICLE THIRD. To my brother, John M. L. Sexton, of Chicago, Illinois, who is at the present time indebted to me in sundry amounts, evidenced by his notes now held by me or otherwise, I do give and bequeath the entire amount of his indebtedness to me, at the time of my decease, however the same may be made to appear, and I do hereby direct my ex-

ecutor and trustee to cancel and surrender to my said brother all evidences of such indebtedness to me, in whatever form such evidences may exist, and from the payment of such indebtedness, or any part thereof, my said brother is hereby released and forever discharged; and in addition to the release and cancellation of his indebtedness to me as above provided, I do will and direct that there be paid to my said brother, John M. L. Sexton, by my executor and trustee, as a further legacy and bequest, the full principal amount of any note or notes executed by me in his favor and which he may hold, or which may be held by any other person or persons for his account and benefit, at the time of my decease, and which by the terms thereof are made payable after my death."

The Fourth Paragraph reads:

"Article Fourth. To my sister, Mrs. Eliza Reilly, of Chicago, Illinois, I give and bequeath whatever sums of money she may be owing to me at the time of my decease, however they may be evidenced, and I direct that all such evidences of her indebtedness to me, in whatever form they may appear, be cancelled and delivered to her; and in addition to the release and cancellation of said indebtedness, if any, it is my will and direction that the full amount of the principal of any note executed by me in her favor and made payable by the terms thereof after my decease, and held by her or by any other person or persons for her account and benefit, be paid to her out of my estate and property by my executors and trustee; and in addition to the provisions above made for her, I do give and devise to my said sister Eliza Reilly, her heirs and assigns, the lot of ground and all improvements thereon, now occupied by her and her family, known and designated as Number 2956 Indiana Avenue, in the City of Chicago."

The fifth paragraph reads:

"Article Fifth. To my sister, Mary McAnrow, of Chicago, Illinois, I give and bequeath all and every part of her indebtedness to me at the time of my decease, however the said indebtedness may be evidenced, and it is my will and direction that all such evidences, if any such shall appear, be cancelled and surrendered to my said sister by my execu-

tor and trustee. It is also my will and direction that the principal sum of any note signed by me in her favor, and by the terms thereof made payable to her after by decease, be paid to her out of my estate; and in addition to the above provisions, I do give" the property occupied by her and known as 4056 Lake Avenue, Chicago; also, certain other property located in Cincinnati.

Sixth Paragraph:

"ARTICLE SIXTH. To my sister, Kate M. Keeler, of Chicago, Illinois, I give and bequeath any and all claims and indebtedness owing by her to me at the time of my decease, and direct that all evidences of such claims or indebtedness be cancelled and surrendered to her by my executor and trustee. It is also my will and direction that the principal of any note signed by me in her favor, and by the terms thereof made payable after my decease, shall be paid to her as a further bequest; and in addition to the foregoing provisions, I do give" the property occupied by her and known as 1468 Michigan Avenue, Chicago.

By the Seventh Paragraph the testator devised to his son, Thomas O. D. Sexton, two farms in Lake County, and $5,000 in money.

The Ninth Paragraph of his will reads as follows:

"ARTICLE NINTH. It is my further will and direction that any note or notes signed by me, in favor of any person or persons, and made payable by the terms thereof after my decease, be recognized and treated as bequests in behalf of the payees therein respectively designated, and my executor and trustee is hereby fully authorized and empowered to pay the amount of the principal of such notes out of my estate and property, or the proceeds thereof. I have heretofore and may hereafter adopt this means of designating the persons I wish to be remembered as beneficiaries under my last will and testament."

By the Twelfth Paragraph the testator devises the residue of his estate to his trustee, mainly for the benefit of his minor son, Patrick J. Sexton, Jr., with the provision that when he

should arrive at twenty-four years of age he should receive the property absolutely.

Paragraphs Thirteen and Fourteen read as follows:

"ARTICLE THIRTEENTH. In respect to the notes hereinbefore referred to as notes signed by me and by the terms thereof made payable after my decease, it is my further will and direction that they be presented and filed in the usual way as claims against my estate in the proper court having jurisdiction of the settlement of my estate, and within the time allowed by law for such settlement, and that when so presented and filed, and in the due course of the business of said court, they be allowed as just claims against my estate, before payment thereof by my executor and trustee and my executor and trustee is hereby instructed and directed to make no objection to the allowance thereof."

"ARTICLE FOURTEENTH. In the settlement of any matters pertaining to my estate, in relation to which specific directions are not herein given, and for information in respect thereto my executor and trustee is hereby referred to such memoranda or statement concerning the same as I may have made and signed and which may be found in the safety deposit vault and in the box containing my personal and private papers, and by following the suggestions, instructions or line of policy, indicated in such memoranda and statements, in the making of settlements, it is my will and direction that no personal obligation shall be created on the part of said executor and trustee."

By Paragraph Fifteen the testator appointed The Merchants' Loan and Trust Company sole executor and trustee of and under the will.

By Paragraph Sixteen testator appointed Rev. Hugh P. Smyth testamentary guardian of his son, Patrick J. Sexton, Jr., without bond, and directed that he be allowed $500 per annum for his services as such.

By Paragraph Seventeen testator expressly revoked and annulled all former wills made by him and declared this to be his only last will and testament.

Neither when the will was presented for probate, nor at any time thereafter, was application made by any one to ad-

mit to probate, as a part of said will, any note or notes, claiming such note or notes to be the notes referred to in the will. Nor have any notes of any kind answering the description given in the will ever been produced or found.

On November 30, 1904, the last day for filing claims, Kate M. Keeler and the other nine claimants filed their separate claims against the estate, in the Probate Court, the claim of Kate M. Keeler being as follows:

"To amount of a certain note or certain notes, signed by said Patrick J. Sexton, in favor of said Kate M. Keeler as payee therein, and by the terms thereof made payable after the decease of said Patrick J. Sexton, and intended as a bequest in behalf of said Kate M. Keeler according to the terms of articles nine (9) and thirteen (13) of the last will and testament of said Patrick J. Sexton, deceased, heretofore probated in this court; the date and amount of said note or notes being at the time of the filing of this claim unknown to the claimant."

The claim of each of the others was filed at the same time and is in the same form.

On December 4, 1905, the several claims came on for hearing in the Probate Court, where, after the hearing, they were severally dismissed. From these several orders of dismissal appeals were taken to the Circuit Court, where a jury was waived, and the cases heard together by the Chancellor. On February 8, 1909, after the hearing and decision by the court, Kate M. Keeler amended her claim by leave of court, *nunc pro tunc* as of September 22, 1908, by adding thereto the following:

"Said note being for the sum of $20,000 and executed and signed by the said Patrick J. Sexton, about the month of June, 1893".

At the same time, each of the other claimants made an amendment in the same form, except as to the amount.

At the conclusion of the hearing, the court entered an order reciting the issues, and making a finding in favor of the claim of Kate M. Keeler, "that the claimant is entitled to have and recover of and from the estate of Patrick J. Sexton, deceased, the sum of twenty thousand dollars ($20,-000), being the amount of the principal of a certain note

signed and executed by said Patrick J. Sexton, in his life-time, in favor of said claimant, and by the terms thereof made payable, after the decease of said Patrick J. Sexton, and intended by the said Patrick J. Sexton as a bequest in favor of said claimant, Kate M. Keeler, according to the terms of said last will and testament of Patrick J. Sexton, deceased, together with interest on said principal sum of twenty thousand dollars ($20,000), at the rate of five per cent per annum from and after December 1, 1904, which interest amounts to the sum of forty-one hundred ninety-one and 78/100 dollars ($4191.78), making the total sum of twenty-four thousand one hundred ninety-one and 78/100 dollars ($24,191.78)"; to which recitals and findings exceptions were duly preserved. After overruling a motion for a new trial and in arrest of judgment respectively, to which exceptions were severally allowed, the court then entered judgment in favor of the claimant in the following words:

"Therefore it is considered, ordered and adjudged by the court that the claimant, Kate M. Keeler, have and recover of and from The Merchants' Loan and Trust Company, as executor of the last will and testament of Patrick J. Sexton, deceased, the sum of twenty-four thousand one hundred ninety-one and 78/100 dollars ($24,191.78), together with costs in this suit to be paid in due course of administration."

The proceedings in the several claims were the same, and judgment in each of the cases was in the same form, but the amounts differed as to the respective claimants, being as follows:

Helen McKeon, as administratrix of the estate
of Eliza Reilly, deceased ................ $24,191.78
Mary McAnrow ......................... 24,191.78
Katie McAnrow ......................... 12,095.89
Susie McAnrow ......................... 12,095.89
Eliza B. Reilly ......................... 12,095.89
Lucinda Reilly ......................... 12,095.89
John J. Reilly ......................... 6,047.95
Thomas W. Reilly ...................... 6,047.95
Kate M. Keeler ........................ 24,191.78

From these several judgments separate appeals were taken to this court.

The executor, appellant here, contends: ᵒ

1. That under the language of the will of deceased no note can be incorporated therein, or be used to designate the donee or the amount of any gift.

2. The alleged notes never having been proved or offered for probate in the Probate Court as a part of the will cannot operate as a testamentary disposition of property.

3. No bequest, however evidenced, can be proved or allowed as a debt or claim against an estate.

4. The Court erred in admitting improper evidence.

5. The finding is contrary to the weight of the evidence.

6. If there ever were notes, they were revoked.

7. Interest should not have been allowed. It is not shown that the alleged notes bore interest before maturity, and it is not shown how long after Sexton's decease the alleged notes matured.

While appellant, Anna L. Sexton, urges that the court below erred in the following particulars:

1. In entering judgment allowing these claims, because if any such notes existed they were not debts of the deceased, and therefore, not claims against his estate.

2. The judgment of the Probate Court admitting the will to probate is *res adjudicata,* and not having been appealed from, stands as the judgment of the court as to the will. This cannot be attacked collaterally in this case.

3. The court erred in admitting any evidence as to the making or existence of notes, because the language of the will itself is not sufficient to entitle any note or notes to be incorporated as parts of the will.

4. If the will remains in the possession of the testator and is not found on his death, the presumption is that he destroyed it with the intention of revoking it.

5. The court erred in the admission of evidence on behalf of appellees.

6. The finding and judgment of the court are contrary to the evidence.

Appellees reply that,

1. The suits were properly brought by filing claims.

2. The language of the will is sufficient to warrant the extrinsic evidence, to make it certain as to the amounts and names of nephews and nieces, etc.

3. There is legal and sufficient evidence to warrant the judgments.

4. Interest was properly allowed.       .

HOYNE, O'CONNOR, HOYNE & IRWIN and McCULLOUGH & McCULLOUGH, for appellants.

G. W. and WHARTON PLUMMER, for appellee.       .

MR. JUSTICE BALDWIN delivered the opinion of the court.

It is intended by the foregoing statements, and by the discussion which shall follow, to cover each of the nine separate claims which are included in the eighteen separate appeals pending in this court.

It appears that the deceased had been for many years prior to his death a brick manufacturer and general contractor in Chicago, and left an estate valued at approximately one million dollars.  His business transactions were large and were attended with more than ordinary risks, and he kept a large part of his property in such form as to enable him to utilize it quickly, in case of necessity.  In 1892, and again in 1896, when about to go to Europe, he turned over to his brother, John M. L. Sexton, his tin box, and the keys to his safety deposit box, telling John that, in the event of anything happening to him, John should follow the instructions which he would find there.  Later, in 1896, deceased arranged for a joint safety deposit box, which could be opened by himself or John, and he took John to the vault, where declaration was made that John was entitled to the contents of the box. This arrangement, after lasting about five years was terminated by deceased, but he did not tell John of the change. In 1902, when again about to go to Europe, he took his sister, Kate M. Keeler, down to the safety deposit vault where

he hired a box, and he gave her the keys, introduced her to the parties in charge, and told her that if anything should happen to him, she would find instructions in the box. In August, 1903, he again went to Europe. At the railroad station, when leaving, he handed a sealed package to his friend, Rev. Hugh P. Smyth, saying, "Take this, this is yours. I will write you instructions from the other side." The package was marked, "This belongs to the Reverend Hugh P. Smyth who knows my will, and this is to be opened only at my death, but not before my death." Following this inscription, was the signature of the deceased.

The package, when opened, was found to contain his will, and more than thirty other documents, several for each of his relatives, including some deeds signed and witnessed by Sexton and his wife, but which had no names of the grantee therein,—some notes, certificates of stock, letters, etc.

His trip to Europe was made because of his poor health and in the hope of securing relief. In this he was disappointed, and upon his arrival there was so ill that he was compelled to go to a hospital, and to employ a nurse. Being advised to return home, he did so, bringing with him one George B. Lawrence, an English nurse. He arrived in Chicago early in September, 1903, went to his residence on Michigan Avenue, where he was attended until his death, by Doctor Patrick. Throughout his prolonged illness, which at times was very serious, his mind remained sound and clear up to the time of his death.

He failed to send any instructions to Father Smyth from Europe or elsewhere, concerning the package, and, upon his return, received it back from him. From that time until his death, the deceased kept the package in a small satchel in his room, in which there was also a carbon copy of his will. During the last few weeks of his illness he was kept informed as to his business, and knew what was going on. He was seen reading the copy of the will several times during his last illness, and he also looked over many other papers, some of which he tore up. He told his wife that whenever he died,

she should give the satchel to Mr. Jacobs, his private secretary, who would know what to do with it. He died in the afternoon, and on the following morning the satchel was delivered to Jacobs who, during the day, delivered it to Father Smyth. The satchel contained only the sealed package (sealed with wax seals) and the carbon copy of the will. The sealed package appeared to Father Smyth to be in the same condition as when it was first delivered to him at the railroad station by Mr. Sexton. Father Smyth took the package to the office of his attorney, where it was opened, and a list of its contents made, and he afterward distributed the contents of the package, but the list was lost, and was never exhibited to any of the interested parties. Various of the notes, deeds and letters and other papers in the package were distributed by Father Smyth among the relatives of the deceased, and the will was given to the Executor.

It is not contended that the supposed notes, under which appellees claim, were in the package at the time it was received by Father Smyth, but, rather, that they were abstracted from the package either after or at about the time of the death of Mr. Sexton, and before it was turned over, and that it was probably done by the widow with the aid of a Miss Gleason, and the package resealed by Jacobs before its delivery by him.

It is contended that the testator made the alleged notes long prior to the making of his will, and probably in June, 1893, and that they were still in existence at the time of his death. To sustain this contention, one A. S. Bradley, a lawyer, testified on the hearing in January or February, 1908, on behalf of the claimants, that he made two wills for the testator prior to the one in question, the first one being in 1888, and the second in 1893. He testified as to the contents of these wills of 1888 and of 1893, respectively, which, according to his testimony, were substantially like the present will. He also testified that at the time of making the 1893 will, the testator made notes and showed them to him; that the notes were made before the will was executed, and the witness gave

the names of the payee and the amounts of the several notes (12 in number), except, that as to those for the nephews he could not remember definitely the amounts, but was certain they were for $5,000 or more, and as to the others the names and amounts in those notes were the names of the several claimants, and the several amounts here claimed.

Appellees claim that these alleged notes, referred to in the will of 1893, are the notes intended to be referred to by testator in the will of 1902, and are the ones which he intended to incorporate therein. To overcome the presumption of law that the testator himself destroyed them with the intention of revoking them as parts of his will, which would exist because of their non-production, claimants charge that they were destroyed either by the widow or by their son, Thomas O. D. Sexton, or by someone at their instance, or that they had knowledge of the existence of such notes and knew what became of them, though the testimony of Mrs. Sexton, Thomas O. D. Sexton, Miss Gleason and Mr. Jacobs is directly to the contrary, and to the effect that they never saw any such notes, nor did they ever know anything as to their whereabouts, if such notes ever existed.

In addition to the testimony of Mr. Bradley, one J. B. Langworthy, an attorney, testified that just before Mr. Sexton went to Europe in the summer of 1903, he told witness that, having been advised by John N. Jewett, Esquire, an eminent attorney of the city, that he could make a will and evidence the amount of the bequest by notes, provided he mentioned the notes in the will and directed in the will that they be paid, he had acted upon his advice, and had made a will in that way, and that Attorney Bradley had known about it and had seen the notes, and had seen that they were drawn in accordance with the law. Judge Kavanagh also testified that about ten days before Sexton's death he called to see him, when Sexton told him about his having provided for relatives by making promissory notes for them as legacies, and asked whether they were legal. Judge Kavanagh asked whether the notes had been delivered, and Sexton replied, "Not to the person for whom they are intended. They are in my

possession now. John N. Jewett thought they were perfectly valid, and I made them out on the direction of Mr. Bradley." Judge Kavanagh promised to look the matter up, but never saw the deceased after that.

Appellees made no contention, that any notes were made by deceased at the time of making the last will of 1902, or at any time after 1893.

The judgment of the court below is, in express terms, a judgment at law, that Kate M. Keeler have and recover from The Merchants Loan and Trust Company, as executor, $24,191.78, to be paid in due course of administration, thus transforming the claim into a judgment against the estate, payable in due course of administration, though the contention of the claimant herself is that the claim is for a legacy, and the court in its finding recites that it is.

Claims against estates of deceased persons are classified, and are payable in the order of such classifications. The judgment for the claim would have preference over bequests. The foundation of this claim is an alleged bequest, and not an indebtedness of the decedent.

The aggregate of the judgment in this case, and that of the other eight claimants entered at the same time, is $133,-054.80, and the effect of these judgments, if they are allowed to stand, would be to take from the estate that sum before the payment of Mrs. Sexton's share, thereby wrongfully reducing the amount to which she is entitled under the will.

It seems clear to us, therefore, that the judgment of the court below was erroneous in form, and that it cannot stand. We deem it our duty, however, to go further than to decide merely as to the form of the judgment, and, therefore, proceed to consider other and controlling questions presented by the record and briefs.

Under the law of this state, testamentary gifts cannot be made in form of unattested promissory notes. The Appellate Court of the Third District in Armstrong v. Armstrong, 142 Ill. App. 507, said (p. 509):

"It is well settled law that a promissory note executed without any other consideration than that of natural affec-

tion, and intended merely as a gift to the donee, cannot be made the basis of a recovery either at law or in equity by the donee against the donor or against his estate after his death. Williams v. Forbes, 114 Ill. 167; Richardson v. Richardson, 148 Ill. 563."

It follows, therefore, that the various claimants here must recover, if at all, not upon these notes as claims against the estate, but upon the contention that by the terms of the will they are so identified and referred to that they constitute the measure of bequests therein made to these several claimants.

Nor can there be any doubt that, in order for Sexton to have made a valid will, he must at the time of its execution, have had a definitely fixed purpose in his own mind, and that purpose must be stated in the instrument itself. Parties are not permitted to make skeleton wills with the purpose of filling them out by future declarations.

Even if we were to conclude from all the surrounding circumstances that the wishes of the testator would be substantially met by allowing these claimants to receive from the estate the amounts contended for, that could not justify us in finding for them unless we can find that the will was complete, and that these claims are within its provisions.

The instrument must, at the time of its execution, and formal attestation of witnesses be complete, and must contain within itself a statement of the testator's intentions.

While the testator may incorporate an unattested paper into his will, it can only be done when such paper is in existence at the time the will is made, and the will must refer to it in such terms as to indicate its then existence, and in such terms as to exclude from its description any instrument or paper thereafter made.

In Thayer v. Welington, 91 Mass. 283, the court said:

"The view thus taken of the present case does not exclude in all cases a reference to other documents or instruments for the purpose of giving effect to a will. A testator may refer expressly to a paper already executed, and describe it with such particularity as to incorporate it virtually into the will,

or he may refer to deeds and other instruments, or monuments, or existing facts, to which reference may be had in construing his will. Habergham v. Vincent, 2 Ves. Jr. 234; Smart v. Prujean, 6 Ves. Jr. 560. The distinction is a very obvious one. In the case last cited, the purpose of the testator as to the particular legatee and the character of the legacy is fully settled. Such reference leaves nothing ambulatory, and excludes the idea of an unsettled purpose and a design to leave anything open as to the person who shall be the legatee. But if his purpose is not definitely settled at the time of executing his will, and is to be fashioned and moulded by future events which may affect his mind, such future determination to make one a legatee cannot be allowed to have any legal effect, unless by the execution of a codicil or a subsequent will, in accordance with the legal requirements of a testamentary instrument."

In Dyer v. Erving, 2 Demarest (N. Y.), 160, the court used the following language:

"At the date of the will, the testamentary purposes of its maker had not fully and definitely and finally shaped themselves in his own mind. But he believed that, by duly executing such an instrument, and by referring therein to other papers as containing directions to his executors, he could order the distribution of his store of paintings and engravings, and of certain pecuniary legacies, according to such scheme as he might afterwards, and upon more mature deliberation, devise,—a scheme which would need to be known to his executors alone and could escape the publicity of record in the Surrogate's court. In other words, he believed, and in my judgment he acted on his belief, that by his reference to memoranda in the fourth clause of his will, he gained the privilege of creating memoranda at his pleasure, and at his pleasure of altering them, and thus of making legally effectual such purposes as at the time of his death might find expression in any holographic papers which purported upon their face to be the memoranda referred to by his will." * * *

"It is with great reluctance that I have formed these con-

clusions. I have little doubt that the real wishes of the decedent at the time of his death find substantial expression in the will as it stands recorded, supplemented by the memoranda that are here the subject of dispute, and that by the decree to be entered upon this decision, the bulk of this estate will be diverted from the hands of those whom the testator by painstaking effort sought to make his beneficiaries. But any other decision than that which I have announced could only be reached by utterly setting at naught the statutes which prescribe the formalities that must attend the execution of testamentary instruments, and the modes whereby such instruments once executed can be revoked."

It is to be noted that among the nine claimants, consisting of the three sisters, two nephews and four nieces, only the three sisters are named in the will. Whatever claims the nieces and nephews may have are entirely dependent upon the phraseology of the will which not only does not mention their names, but fails to specify the dates, the names of the payees, and maturity or the amounts of the several notes forming the basis of these respective claims.

The provisions invoked on behalf of the respective sisters, so far as relate to the notes claimed to have been executed, are (1) as to Kate M. Keeler,

"It is also my will and direction that the principal of *any note signed by me in her favor, and by the terms thereof made payable after my decease,* shall be paid to her as a further bequest."

(2) As to Eliza Reilly, "and in addition to the release and cancellation of said indebtedness, if any, it is my will and direction that the *full amount of the principal of any note executed by me in her favor, and made payable by the terms thereof after my decease, and held by her, or by any other person or persons for her account and benefit,* be paid to her out of my estate, and property by my executors and trustee."

(3) As to Mary McAnrow, "It is also my will and direction that the principal sum of *any note signed by me in her favor, and by the terms thereof made payable to her after my decease,* be paid to her out of my estate."

As to the claim in favor of the four nieces and the two nephews the provision is,

"It is my further will and direction that *any note or notes signed by me,* in favor of *any person or persons,* and made payable by the terms thereof after my decease, be recognized and treated as bequests in behalf of the payees therein respectively designated, and my executor and trustee is hereby fully authorized and empowered to pay the amount of the principal of such notes out of my estate and property, or the proceeds thereof. *I have heretofore and may hereafter adopt this means of designating the persons I wish to be remembered as beneficiaries under my last will and testament."*

Article Thirteen of the will also provides:

"In respect to the notes hereinbefore referred to as notes, signed by me and by the terms thereof made payable after my decease, it is my further will and direction that they be presented and filed in the usual way as claims against my estate."

The Third Paragraph of the will is, in part, as follows:

"I do will and direct that there be paid to my said brother, John M. L. Sexton, by my executor, and trustee, as a further legacy and bequest, the full principal amount of any note *or notes executed by me in his favor and which he may hold, or which may be held by any other person or persons for his account and benefit,* at the time of my decease, and which by the terms thereof are made payable after my death."

Though John M. L. Sexton made no claim under this provision, it is here cited because, with the other citations, it covers the entire provisions of the will in relation to bequests of this character.

It is contended that the language of the will is sufficient to warrant the extrinsic evidence offered to make it certain as to the number, dates, amounts, and maturity of the several notes intended to be included, and the names of the respective nephews and nieces who were to be beneficiaries. After a careful examination of the subject we are unable to reach this conclusion. The testator had executed at least two wills previous to the one in question. The proof tends to show that

these wills were quite similar in terms to this one. The deceased appears to have been advised by his lawyer, Bradley, and to have believed that he had the right to dispose of his property by making general provisions in the will, skeleton in character, the details to be furnished by notes or other written memoranda, and we are forced to conclude from the evidence and from the wording of the clauses before mentioned in this will that the testator believed he had the right to make and alter notes at his pleasure, and thus change the disposition of his estate from time to time, as his circumstances and inclinations might dictate. Indeed, the deceased, himself, said to Bradley that, if his "affairs should prosper," "I think I may make additional notes." And he was advised by Bradley, "If you want to make some more notes and put in there, all you have to do is to go to John and get the key of the safety deposit vault and unseal your package and put in your notes and seal it up again. That is all you have to do. John will be your executor and trustee, and you have entire confidence in him, and he will pay those notes no doubt, or if he can't he will have to pay them as legacies." We do not think that the attested will expressed his final determination as to the disposition of his property. Indeed, the letter from deceased to his wife, written in London on the 31st day of August, 1903, clearly indicates not only that he then knew how serious was his physical condition, but that he was considering the matter of his will and an intention of changing it, either by making notes or otherwise, for he says, "In the hurry of coming away, I did not finish my will and so on, but will add a codicil if I can." The language of the clauses in his will wherein he speaks of "any note or notes signed by me, in favor of any person or persons," and "I have heretofore and may hereafter adopt this means of designating the persons I wish to be remembered as beneficiaries," strongly supports the view that he had not yet definitely determined what notes, if any, he wished to incorporate into his will, but intended to reserve the power to make changes in this manner both as to the beneficiaries and the amounts they were severally to receive whenever he desired.

We think it clear upon principle that the law will not permit this to be done, and the following are some of the authorities which so hold:

University College v. Taylor, L. R. P. D. 1908, p. 140–144; In re Yockey, 29 L. T. R., N. S. 699; Thayer v. Wellington, 91 Mass. 283; Bryan's Appeal, 77 Conn. 240; Dyer v. Erving, 2 Demarest, N. Y. 160; Rose v. Cunynghame, 12 Vesey Jr. 12; In re Watkins, L. R. 1 P. & D. 19 (1865); Hartwell v. Martin, 71 N. J. Eq. 157; In re Reid, L. J. P. D. & M. 1 (1868); Heidenheimer v. Bauman, 84 Tex. 174.

In Trustees, etc. v. Hall, 48 Ill. App. 536, on page 545, the court says:

"If one desires to make a solemn disposition of his property, to take effect only after his death, yet leaving him so long as he may live fully empowered to change such disposition, or to apply its subject matter to his own use, or to any other purpose, he must do so by a will executed in strict conformity with the statutory enactments regulating such bequests. Redfield on Wills, Vol. 3, 348; Cline v. Jones, 111 Ill. 563; Olney v. Howe, 89 Ill. 556. The note in question cannot be received as a testamentary bequest and given the force and effect of a will, under our statute, providing for the execution of such instruments."

Even if we regarded the will as being sufficiently specific in its language to authorize proof concerning the notes therein referred to, we think the claimants have failed to establish their several claims by sufficient legal evidence. The testimony concerning the original making of notes, as claimed, is exceedingly unsatisfactory. When Bradley testified concerning some notes, claimed to be the ones involved in this litigation, he was speaking of a transaction which occurred more than fourteen years before. It is no reflection upon his integrity to say that after fourteen years of active practice in Chicago, the terms of the notes, concerning which he has testified, could not have been as clear and distinct in his mind as if the occurrences were more recent. In addition to the lack of clear recollection, which an inspection of his testimony discloses, there is the further fact that his testimony

was not very specific. Attorney Crahen, who prepared this will, testified that no notes were exhibited at the time it was drawn or executed, though he thinks notes were mentioned. The claims here are upon nine alleged notes,—it is claimed that they were the ones made in June, 1893, but Bradley testifies that there were twelve notes executed at that time. How many beneficiaries did Sexton intend to include in his last will,—were there to be nine, ten or twelve, and which ones? Moreover, if it be assumed that the notes had been made at the time the will was executed, the ordinary presumption that they had been destroyed by the testator, and therefore eliminated from his testamentary purpose, is not satisfactorily overcome. We are not at all satisfied, from the evidence, that any such notes were in the possession of Mr. Sexton, or even in existence, at or about the time of his death. We do not find in the evidence any sufficient warrant for believing that the notes in question were destroyed either by Mrs. Sexton, or by her in conjunction with Miss Gleason and Mr. Jacobs, or any one else.

Nor do we think that the language of the will, or the evidence, or both together, justify the conclusion that, when Sexton made this last will in 1902, he had in mind and intended to refer to the notes of 1893, nor even, that such notes were then in existence.

Nor do we think the language of this last will sufficient to incorporate into it the alleged detached promissory notes upon which claimants rely. Nor does the will so distinguish as to clearly indicate whether the notes therein referred to were then in existence, or were thereafter to be made.

Treating this case as of an equitable nature, or, at least, as a statutory proceeding, as distinguished from an ordinary suit at law, (Grier v. Cable, 159 Ill. 29), we conclude, that, for the reasons given, the judgment of the Court below must be reversed and the cause remanded, with instructions to dismiss the proceeding.

*Judgment reversed and cause remanded with instructions to dismiss the proceeding.*