Patty v. Goolsby.

## PATTY V. GOOLSBY.

1. WILLS: *May include after-acquired lands.*
   When a will manifestly designs to dispose of the whole estate of the testator,
   as it exists at the time of his death, it will include after-acquired lands of
   which he dies seized and possessed.

2. SAME: *Construction; Estate conveyed; Power of sale.*
   By the first item of his will a testator gave "his entire estate," real and per-
   sonal, to his wife, "during her natural life," or until she might "think
   proper to marry, with full power to sell and dispose of such property as
   she might think proper." The second and third items are as follows:
   2. "It is my desire that, at the death of my said wife, all my worldly

Patty v. Goolsby.

effects be equally divided between my children." 3. "If my wife should marry, it is my will and desire that my estate of all kinds whatsoever be equally divided between my wife and children, thereby each one to share each and each alike." By other provisions the wife was made executrix and charged with the payment of the testator's debts and the education of his children out of the estate. *Held:* (1) That the testator gave to his wife a life estate in the real property with remainder in fee to his children. (2) That while, under the power contained in the will, the wife could dispose absolutely of the personal property of the testator, she could sell only her life interest in his real estate.

3.  ESTOPPEL: *Acquiescence in sale.*
   Where a widow, having only a life estate in the lands of her deceased husband, without power to sell any greater interest, conveyed them in *fee simple*, and her children, who are the devisees of the remainder, were present and assented to, or acquiesced in the sale, they are not thereby estopped from claiming the lands, as against the purchaser, on the termination of the life estate, where it does not appear that he was misled by their conduct, or was ignorant of their reversionary interest, nor that they were then of age, or knew of their interest.

APPEAL from *Little River* Circuit Court.

R. D. HEARN, Judge.

*Compton & Compton*, for appellants.

1.  Under the laws of Arkansas the land, though after-acquired, passed by the will. Review the common law rule, 11 Mod., 148; 1 Salk., 238; 4 Burrow, 1960; 3 Atk., 798; 7 Term Rep., 419, which was followed in many of the American courts, (5 Johns. Chy., 441; 5 Peck, 112; 6 N. H., 47; 4 Kent Com., 11 Ed. marg. p. 510 note; 1 Redfield on Wills, 3 Ed., pp. 387, 332 and notes), but contend that in most of the states it has been changed by statute, and in others the reason of the rule having ceased the rule has also ceased. See also the Stat. Henry viii, c. 1 and 34 Ib., c. 5; Stat. at Large (Eng.)vol. 5, pp. 1, 136; 2 Chitty, Blackstone, marg. p. 314; Co. Litt., 392.

This rule was unsatisfactory, but was too well established to be overturned by judicial decisions. 3 Dougl., 366; 4 Burr., 1960, but was changed by 1 Vic., ch. 26; 4 Kent. Com. (11 Ed.) marg. p. 500 and note; Theobald Wills(3d Ed.) pp. 603, 609; Hawkins on Wills, (2 Am. Ed.) marg. p. 18. The rule also abolished in America. See note to Hawkins on Wills, 2 Am. Ed., marg. p. 18.

This common law rule *never* prevailed in this state, the reasons upon which it was founded being taken away by the earliest legislation of the state. Act 30 Nov., 1837; *Bunch v. Nicks*, 50 Ark., 367; Mansfield's Digest, secs. 639, 644, 642 and 6490.

The several items of the will taken together, manifestly show the intention of the testator to give his entire estate to his wife during life or widowhood, *with full power to sell and dispose* of same if deemed best. No intention to limit the power of disposal to the life interest of the wife is expressed and none can be implied. Such a limitation would have been, in the highest degree, impracticable and unwise; and could not have been intended by the testator.

2. And even if it could be held that the lands did not pass by the will, they, nevertheless, belonged to the estate of the testator, and it is insisted that his wife, in the exercise of the general power conferred on her to dispose of any part of the *estate*, had the right to sell and make a valid title to the lands, whether they passed by the will or descended to the heirs.

3. The heirs, as alleged in the answer, stood by when the sale was made, one of them assisting in making it, and made no objection to, but acquiesced in the sale, are now estopped to set up title to the lands. Bigelow on Estoppel, 3 Ed., pp. 515, 517, and authorities cited in note 7. 1 Story's Eq. Jur., 5 Ed., sec. 385.

*Dan. W. Jones*, for appellees.

The will conferred only a life estate upon Elizabeth, the widow, with remainder in fee to the children of the testator.

The will is to be construed as a whole, so as to carry into effect the intent of the testator. 18 Wall., 493; 49 Ark., 128.

The power of disposal was limited to the personal property, and if applicable to the realty at all, was limited to her life interest. *Giles v. Little*, 104 United States, 291; also 6 Pet., 68; 93 United States, 326; 13 Vesey, Jr., 445; 36 Ill., 355.

2. The widow could sell no greater interest than she acquired under the will. Authorities *supra*.

3. The facts alleged do not create an estoppel. Herrmann on Estoppel, secs. 410, 414; 36 Ark., 96, 114; 15 Id., 55, 62.

CLARK, Sp. J.

This is an action of ejectment brought by the appellees, heirs at law of Peter R. Goolsby, against Owen W. Patty and Robert L. Moore, to recover the following lands, to-wit: The east ½ of s. e. ¼ and w. ½ of s. w. ¼ of section 16, in t. 12 s., in r. 29 w., in Little River county, Arkansas.

There was a complaint and answer, an amended and substituted complaint and answer. The court sustained a demurrer to the answer to the amended and substituted complaint and the defendants rested and appealed. There was a jury trial as to the value of the improvements and the rents and profits, and exceptions to the verdict, but this is made no question here.

The undisputed facts upon which the sufficiency of the answer must be determined are as follows:

Peter R. Goolsby, father of the appellees, on the 14th day

of May, 1862, he then residing in Columbia county and being seized and possessed of both personal and real estate, made and published his last will and testament. Afterwards, he moved to Little River county, where on the 23d day of December, 1869, he purchased the lands in controversy, and where, near ten years after, having executed his will, to-wit: on the——day of March, 1872, he died, never having revoked or changed his said will.

The provisions of the will were as follows: "First: I give and bequeath unto my beloved wife, Elizabeth Goolsby, my entire estate of whatsoever kind it may consist, viz: All my negroes, lands, stock of all kinds, with all my debts due me in any way; also my household and kitchen furniture, to have and to hold during her natural life, or until she may think proper to marry, with full power to sell and dispose of such property as she may think proper; also to trade and buy such property as she in her judgment may think best."

Second: "It is my desire that at the death of my said wife, all my worldly effects be equally divided between my children."

Third: "If my wife should marry, it is my will and desire that my estate of all kinds whatsoever be equally divided between my wife and children, thereby each one to share each and each alike."

Fourth: "It is my will in the event that I die while my children are small or in their minority, that they be educated according to their ability and that my wife pay strict attention to their instruction and that the means be provided from my effects for that purpose."

Fifth: "It is my will and desire that my debts be paid out of the first moneys raised by my wife from the estate, and that she have full power to manage and control my

whole estate until her death or until she may think proper to marry, without any further administration than to have this will properly recorded and proven according to law and the circumstances of the times.''

Sixth: .''It is my will that my beloved wife, Elizabeth Goolsby, be and she is hereby appointed executrix upon this my last will and testament.''

After his death his wife caused the will to be proved up and probated and took possession of the estate, real and personal, including these lands, and proceeded to manage and control the same for the support of herself and the maintenance and education of the children, two of whom, Annie and Myrtie, were born after the execution of the will, until her death, which was before the commencement of this suit. In the meantime in order to pay for goods, wares and merchandise purchased for her own use and that of the children, and to carry on and cultivate the plantation, on which they resided as a family, she sold and conveyed the lands in controversy, on the 28th day of June, 1877, to defendant, Robert L. Moore, for the consideration of $800, which was paid. This deed conveys the property as her own in fee simple with full covenants.

There was no order of the court for the sale and the conveyance does not refer to the power of disposal in the will. Possession was given and subsequently Moore conveyed it to his co-defendant, Owen W. Patty.

It is obvious that the rights of the parties depend upon the construction and effect of the will. It is contended by the appellees:

1st. That these lands being after-acquired lands, did not pass by the will, and the testator, Peter R. Goolsby, dying intestate as to the same, they descended to the defendants as his heirs at law.

Patty v. Goolsby.

2nd.  If they did  pass,  still  the  power of disposal con-tained in the will to Elizabeth Goolsby was limited  by  the estate granted to her, which was only an  estate for life, sub-ject to be divested upon her marriage,  and  dependent upon this estate the plaintiffs, the children, by  the  terms  of  the will took a vested  remainder at  the  date  of  the will which came into being and they became fully seized upon the death of Elizabeth.

In the one case, therefore, they claim title by descent.  In the other as devisees under the will.

It will be noticed here that the  will  purports  to  convey property *in presenti* and not such  in  terms  as  the  testator should die seized of.   But it is said that  this  is  immaterial since it is the nature of a will to take  effect  only  upon  the death of the testator, and the  testator is supposed always to refer to the condition of his affairs at the time  of  his  death and to intend to convey such lands as he should die seized of.

While by the common law a will was generally  construed to speak from the death of the testator as  to  personalty,  it was not so as to real estate.   For  real estate to pass by will it was requisite that the testator should be seized at the time of  making  the will,  and  continue  so  seized to the time of his  death,  and  it seems this rule was  independent  of  any intention to convey such  after-acquired  property  expressed in the will.   The reason assigned  was  that a will was noth-ing more than a mode of conveying a  particular  estate  and the testator could not convey property of which  he  was  not seized.

This rule, though many times adversely  criticized by emi-nent English judges, was never changed in England until the statute 1 Vict., c. 26, sec. 3, which  took  effect  upon  wills made subsequent to the year 1837.   Schouler on Wills, secs.

29, 486, and the English law in this respect has been recognized in most parts of the United States. But in later times it has been changed in most of the states, if not all of them, generally by statutes declaring that wills shall take effect upon lands capable of being devised at the time of the death, although acquired after the date of the will, if such was the intention of the testator, or unless a contrary intention was manifest from the will, or by statutes abolishing the grounds upon which the English rule was based. See 4 Kent. Com., 13th Ed., 512; 1 Williams Ex'rs, 6 Am. Ed., 6, Perkins' notes; 1 Jarman Wills, 5 Am. Ed., 326, Bigelow's notes; *Kimball v. Ellison*, 128 Mass., 41; *Whittemore v. Bean*, 6 N. H., 47; *Roony v. Stiltz*, 5 Wheat., 381.

We are not aware that the question has ever been directly before this court, nor has there been any legislation in this state in terms changing or abolishing the English law on the subject. But a course of legislation was adopted at an early day wholly inconsistent with it and which has certainly swept away the principles or grounds upon which the rule has ever been understood to be predicated. Thus by act of 30th November, 1837, it was enacted "that all lands, tenements, hereditaments may be aliened and possession thereof transferred by deed without *livery of seizin;*" and by the same act it was further provided, "that any person claiming title to any real estate, may, notwithstanding there may be an adverse possession thereof, sell and convey *his interest* in the same manner and with like effect as if he was in the actual possession thereof." And furthermore, "that if any person shall convey any real estate by deed purporting to convey the same in fee simple, absolute or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or

equitable estate afterwards acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance.''

It is true these statutes refer in terms only to conveyances by deed; but devises were always regarded as a mode of conveyance—always classed among the several species of alienation of real property and limited generally by the same rules. For instance, by the common law, or rather by the statute of 32 Henry viii, ch. 9, which was a part of the English statute of wills, the power of alienation was forbidden in all cases where the party was not seized in fact. Full seizin included possession. The grantor must be able to deliver possession, which was done by a peculiar formality called *livery of seizin*, and involved a formal entry and investiture upon the land which could not be made where another person held possession claiming adversely. Where such was the case, every species of grant was made void except releases. See 2 Bouvier's Inst., 1997; Coke Lit., 214, a.

This rule and the reasons for it were made applicable to grants and devises alike, although livery of seizin could have no application to wills except by a kind of analogy—a bare technicality—for no feoffment or any kind of delivery was requisite to the validity of a will. As said by Lord Mansfield in criticizing the rule in 3rd Douglas, 361: It was founded upon a bare technicality and might just as well have been decided the other way; but he held that it had then become too thoroughly established to be shaken.

The object of the rule as stated in English works was to prevent dealing in pretended titles.

Every such sale was void as an act of maintenance where-

by rich and powerful men were enabled to oppress the weak. 2 Bouvier, 381; Coke Lit., 214, a; Bigelow on Estoppel, 322; 1 Devlin on Deeds, 112.

But under our statutes above referred to, every species of vested interest and every possibility coupled with an interest in lands may be conveyed by deed as well as after-acquired property. And our statutes of wills, see Mansfield's Digest, sec. 6470, seems to have been enacted with the purpose of putting conveyances by will upon a corresponding basis of enlargement. And see Descents and Distributions, Mansfield's Digest, sec. 2522.

1. WILLS: May include after-acquired lands.

Where a will manifestly designs to dispose of all a testator's estate, real and personal, as in this case, knowing that it is to take effect only at his death—that until that event the will is ambulatory—that he may sell or buy or dispose of his property conveyed by the will, and notwithstanding such changes by him, does not revoke or change his will, but leaves it to remain as first made, the presumption, we think, is strong that his intention and belief was that the will would take effect upon the whole estate as it existed at the time of his death and that he did not intend to die intestate as to any part of it. 5th Otto, 591.

Considering the great changes in the policy, as well as the formalities in alienating and assuring title to real estate from what they were when the English rule on this subject originated and prevailed, we cannot see, notwithstanding the common law has never been changed by any positive statute, any reason why a will should not speak from the death of the testator as to real as well as to personal estate, and we are therefore of the opinion and so hold that the said intestate beiing seized and possessed of the said lands at the time of his death they were included in his will and were conveyed thereby.

Patty v. Goolsby.

As to the construction of the will we see no difficulty 2. SAME: Construc- tion: Estate conveyed: Power of sale whatever. The testator has given, and no doubt intended to give to his wife Elizabeth, a life estate in both his personal and real property—in his whole estate. It is equally as clear that he gave and intended to give a remainder in fee to his children. The language is clear and admits of no dispute. It will be seen that the bequest of the remainder is to his own children, some of whom were then living, and not to the children or heirs of his wife to whom he gave the life estate. The word heirs is not used and nothing indicates even that she was the mother of the children. Had the bequest been to his wife Elizabeth for life, with the remainder over to *her heirs*, she would have taken a fee in the lands and might have disposed of them as she pleased under the law called the Rule in Shelly's case, which has never been abolished in this state. So if the will had been a bequest of his whole estate to his own heirs absolutely, it would, by common law have been void or inoperative, and the heirs after his death, would have taken the lands by inheritance and not under the will. 4 Kent. Com., 216, 506; Boone Law of Real Property, 329, 341. But here the bequest of the remainder is a specific bequest to parties in being, as specific and definite as the life estate of the widow. It was therefore not a contingent but vested remainder—vested at the same time the life estate vested.

It is true that out of the proceeds the widow was to pay the debts and support and educate the children. This provision would be material as evidence that she took a fee simple in the lands under the will instead of a life estate, if the language would admit of such a question. Boone's Law of Real Property, sec. 381. And so the power of disposal and sale of any and all of the real estate given to her may be

regarded as inconsistent with the life estate therein, and consistent only with a devise of the fee, and such provisions have always been treated as evidence to that effect, but never to the extent of annulling the plain and unequivocal language of the will.   See *Smith v. Bell*, 6th Peters, 68.   But it is contended and the question is, whether admitting only a life estate in Elizabeth Goolsby, she had power to dispose of the lands absolutely.   The language of the power is : ''To have and to hold during her natural life, or until she may think proper to marry, with full power to sell and dispose of such property as she may think proper.''

Obviously considered by itself, the language of the power is broad enough to accomplish that object.   But the power must be so construed as to give effect to other provisions of the will. If she could sell absolutely the lands, she could manifestly sell the whole estate and disinherit the children.   Moreover such construction of the power is inconsistent with the limitation to a life estate in her; for it would be useless to limit her title to a life estate, if at any time she might by sale convert the whole estate to her own use.   The power, we think, should be so construed as to be consistent with the life estate, and not so as to enable her to cut off the remainder in fee to his children.   It would be unreasonable, we think, to attribute such an intention to the testator, and would not be consistent with the language in which the remainder is given to them, which is as follows :  ''It is my desire that at the death of my said wife *all my worldly effects* be equally divided between my children.''

This language is very broad and purports to convey the whole estate without reference to a sale of any part by the widow.

It has been very ably and plausibly argued that the widow be-

ing charged with paying the debts and raising and educating the children out of the proceeds of the estate, is a strong argument of the intention to give the power of absolute disposal of the lands for that purpose. But to us it is not clear that such power would be any advantage for such a purpose. A power of disposal limited to her life interest might be thought to be equally adequate to every purpose of the will and would not interfere with the children's rights. However, whatever reasons we may advance on this subject, the authorities seem to be a unit, that where a remainder over is limited upon a devise of lands to take effect upon the death or marriage of the devisee, the first taker has but a life estate, though the language of the will does not in terms create a life estate; and that the power of disposal of the property in the tenant for life will be limited by his own interest in the lands.

Both of these positions were so decided in the case of *Giles v. Little*, 104 United States, 291, and the court there says: "It is contended that even conceding that the will gives the widow of the testator an estate for life, yet it conferred on her during her widowhood the power to convey the entire estate in fee, and she having so conveyed, the defendants in error who claim under her have a good title." But the court says "the authorities are averse and show that when a power of disposal accompanies a bequest or devise of a life estate *the power is limited to such disposition as a tenant for life* can make unless there are other words clearly indicating that a larger power was intended." And the court cites various authorities fully sustaining their position.

*Brant v. Va. Coal and Iron Co.*, 93 United States Rep., 326, is clearly to the same effect. There the last testator made a bequest "to his wife of all his estate, real and per-

sonal; to have and to hold during her life *and to do with as she sees proper before her death*," and the court held that under this power she could convey only such interest as she held in the estate.

We might cite numerous other cases to the same effect, but deem it unnecessary. It is asked: "If this is the proper construction of the power what effect can be given to it?" The answer is that the law as to the personalty is very different. A bequest of a life estate in personal property with remainder over gives the first taker without any express power for that purpose, the absolute right to all perishable articles, or those like corn, wine and other articles of food or drink, whose use consists in their consumption, and he may dispose of them at pleasure unless restrained by other provisions in the will. See Schouler on Wills, 558. But a power of disposal as in this case is not limited to perishable articles or such as are consumed in the using, but gives to the life-tenant the absolute interest in all personalty and leaves the subsequent limitation void. Under this will the widow, by virtue of the powers which it contains, had unlimited control over the whole personal estate and might dispose of any part of it as she pleased. To be sure she was under a trust obligation to use the proceeds for the declared purposes of the will, but this could not affect the right and power to dispose absolutely of the property. Doubtless she could lease or rent the real estate and appropriate to her own use the rents and profits. See upon these points *Jones v. Bacon,* 68 Me.,24; *Howard v. Carusi,* 109 United States, 725; 4 Del. Chy., 311; *Stevens v. Winship,* 1 Pick., 318.

But as the construction of the will as to the personal estate is not in issue, we will pursue the investigation no further. We are of the opinion that the deed of Elizabeth Goolsby to

Robert L. Moore conveyed only an estate during her life and terminated at her death, when the plaintiffs became entitled as devisees of the remainder.

It is alleged in the answer demurred to "that plaintiff, William P. Goolsby, stood by and witnessed said deed (from Elizabeth to Moore) and that the remainder of said plaintiffs and those under whom they claim stood by and assented to said sale and conveyance," and it is contended that by reason of this they are estopped from claiming the lands. The demurrer of course admits the truth of the answer and the question is, did this conduct bring them within the law of estoppel? We think not. At that time the plaintiffs had no immediate interest in, and no control of the lands. It is not alleged that the purchaser was induced by this conduct to make the purchase or that he was in any way misled by it, nor that Moore was ignorant of their interest in the property; nor that their omission at the time to object or to claim title was done with the intention of inducing the purchase. In fact, it does not appear that the children were at that time of age or that they knew of their own reversionary interest in the lands. Bigelow on Estoppel, 480. Affirmed.

BATTLE, J., did not sit in this case.

*3. ESTOPPEL: Acquiescence in sale.*