## GALLOWAY *v.* DARBY.

### Opinion delivered November 18, 1912.

1. WILLS—DEATH OF LEGATEE OR DEVISEE—LAPSE.—It is the rule, except where changed by statute, that a legacy or devise lapses when the legatee or devisee dies before the testator. (Page 562.)

2. SAME—CONSTRUCTION.—Where a will provides that "all the property herein devised and bequeathed, unless otherwise and specifically stated, shall vest in the devisees, their heirs and assigns, in fee simple," the words "heirs and assigns" are used in a technical sense to denote the character of the estate or extent of the interest to be taken by the devisees, and are words of limitation, and not of substitution. (Page 563.)

3. SAME—CONSTRUCTION—LAPSE OF LEGACY OR DEVISE.—The rule that a devise lapses when the devisee dies before the testator applies where the devise is to persons named and "their heirs and assigns" if there is nothing else to show that the word "heir" was used in the sense of children. (Page 571.)

4. SAME—LAPSED DEVISE—EFFECT.—Lapsed devises of real estate fall into the general residuary clause unless a contrary intention of the testator is clearly expressed in the will. (Page 572.)

5. SAME—PRESUMPTION AGAINST INTESTACY.—Where the testator's intention is in doubt upon the whole will, a broad, rather than a strict,

construction of the residuary clause should be adopted, because such
a clause is usually inserted to provide for contingencies or lapses, and
to cover whatever is left after satisfying specific and special purposes
of the testator manifested in the other clauses of the will; the pre-
sumption being against partial intestacy.   (Page 572.)

6.   SAME—PRESUMPTION AGAINST INTESTACY.—In a residuary clause in
a will devising "all the rest and residue of my estate *not hereinbefore
specifically devised and bequeathed,*"the words in italics do not overcome
the presumed intention to include lapsed devises in such clause.
(Page 574.)

7.   EQUITY—JURISDICTION.—Objection to the jurisdiction of chancery
upon the original complaint will not be considered where the alle-
gations of the cross complaint are sufficient to give the court juris-
diction.   (Page 575.)

8.   SAME—RETAINING JURISDICTION FOR COMPLETE RELIEF.—Where
equity takes jurisdiction for one purpose, it will retain jurisdiction to
settle the rights of the parties in the subject-matter of the controversy.
(Page 575.)

Appeal from Pulaski Chancery Court; *John E. Martineau,*
Chancellor; reversed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1.   The court had jurisdiction, plaintiff being in pos-
session.   50 Ark. 562.

2.   On the death of the devisee, Mrs. Darby, in the life-
time of the testatrix, the devise lapsed and passed to the resid-
uary legatee.   Jarman on Wills, p. 617, 1 Am. Ed; 18
A. & E. Enc. of L. 748; 2 Redf. on Wills, 157; 2 Williams
on Ex. 496.   The rule is changed as to a child or descendant
by § 8022, Kirby's Dig.   Mrs. Darby was not a descendant.
For constructions of similar statutes, see 18 A. & E. Ency.
Law 756; 89 Ind. 529; 7 N. J. Eq. 462; 1 Bradf. Sur. (N. Y.)
314; Words of inheritance are not necessary in deed, but other-
wise as to wills.   49 Ark. 125; 3 *Id.* 422.

3.   Where a gift is to a person, his heirs, etc., the term
"heirs and (or) assigns," in a will is used, merely as words of
limitation, never as words of substitution.   Jarman on Wills,
618, No. 338; 18 A. & E. Ency. Law 754; Redf. on Wills 436,
1 S. 324, (2-160); Willis, 293; 67 Conn. 249; 83 Ind. 339; 80
Me. 290; 108 Mass. 382; 158 *Id.* 411; 159 *Id.* 280; 162 *Id.* 59;
27 Abb. N. C. (N. Y.) 437; 3 Dem. (N. Y.) 43; 113 N. Y. 396;

60 Tex. 426; 2 Williams on Ex. 327; 3 Jarman on Wills, 700, section 838.

4. On lapse of devise property goes to residuary legatee and not to the heirs. 2 Jarman on Wills, p. 365, § 762; Underhill on Wills, p. 79, § 62; 2 Redf. on Wills, p. 116; 113 N. Y. 522; 129 Mass. 97; 45 N. Y. 254; 51 Ark. 61; 131 N. Y. 237; 88 *Id.* 560; 113 N. Y. 115; 141 *Id.* 29; 144 *Id.* 621; 32 Hun 10; 16 Vis. 451; 4 *Id.* 709; 24 N. J. Eq. 512; 63 Hun 352; 113 N. Y. 123.

5. The distinction between devises and legacies at common law has been abolished. 51 Ark. 61; 55 N. J. Eq. 189; 127 Cal. 90; 53 Nev. 354; 79 Ind. 167; 7 Met. (Mass.) 141; 91 Mass. 283; 16 Hun. 76; 45 N. Y. 245; 141 N. Y. 29; 67 Conn. 249, 34 Atl. 1106; 5 Lea 653; 89 Ind. 529; 54 Me. 291; 152 N. Y. 475; 13 Rich. Eq. (S. C.) 104; 5 Dutch. (N. J.) 345; 88 Pa. St. 474; 147 *Id.* 67.

*J. A. Comer* and *John McClure*, for appellees.

1. A "residuum" caused by a lapsed devise can not be called or treated as a "rest and residue of an estate." 1 Swanston (Eng. Ch.) 570; 23 N. Y. 312; 71 N. Y. 346; 62 Oh. St. 414.

2. In the construction of residuary clauses of a will, if there be a doubt about what the testator intended should pass, the doubt should be resolved in favor of the heir at law. 1 Hill (S. C.) 96; 10 Ohio 334; 62 Conn. 142.

3. Courts are not at liberty, in the absence of words showing such intent, to presume the testator intended to pass the lapsed lands away from the heir. 6 Paige Ch. (N. Y.) 611; 1 Willes Rep. (Eng. Ch.) 296; 3 Harr. & McHenry (Md.) 333; 4 Paige Ch. (N. Y.) 117; 13 How. (U. S.) 390; 86 Pa. St. *Yard* v. *Murray*; 1 Swanst. Eng. Ch. 570; 23 N. Y. 312; 79 N. Y. 346; 62 Oh. St. 414; 2 Blackstone 737; 6 Conn. 304; 36 Pa. St. 113; 3 Manf. (Va.) 77; 62 Conn. 142; 94 Md. 463 etc. The doubt should be resolved in favor of the heir at law. Cases *supra*; 1 Hill Ch. (S. C.) 96; 19 Oh. 334; 18 How. (U. S.) 300; 16 Vesey Jr. 451. *Patty* v. *Goolsby* is not an authority in this case.

4. The rule as to lapsed devises of real estate at common law is noted in 1 Underhill on Wills, § 335. All other writers

concur. The land goes to the heir at law. 6 Paige. Ch. 611, 113 N. Y. 354; 1 Willes E. Ch. 296; 6 Conn. 304; 18 R. I. 68; Ambler 325; Fortescue 182.

McCULLOCH, C. J. The merits of this controversy involve the construction of the last will and testament of Elizabeth S. Shall, who died in the city of Little Rock on March 23, 1908, the owner of a large estate, consisting mostly of valuable lands, city and farm property. The will was executed January 17, 1898, and on April 14, 1905, she added a codicil. The preamble or introductory clause of the will reads as follows:

"I, Elizabeth S. Shall, of the city of Little Rock, county of Pulaski, State of Arkansas, being in good bodily health and of sound and disposing mind and memory, calling to mind the frailty and uncertainty of human life, and being desirous of settling my worldly affairs and directing how the estate with which it has pleased God to bless me shall be disposed after my decease, while I have strength and capacity so to do, do make and publish this, my last will and testament, hereby revoking and making null and void all other last wills and testaments, by me heretofore made; * * * as to my worldly estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, towit:"

In item 1 the testatrix gave to appellant, D. F. S. Galloway, who was her grandnephew, her home in the city of Little Rock, and all its contents, furniture, paintings, silver, etc.; horses, carriages and harness; and also certain other lots of real estate in said city, and a tract of land in Pulaski County containing 180 acres.

In item 2 she gave to her nephew, W. A. Galloway, two lots in Little Rock, and a certain tract of land in Pulaski County.

In item 3 she gave to her niece, Elizabeth S. Darby, a farm in Pulaski County known as the "Shall place," containing about 786 acres. The language of that devise is as follows:

"I give, devise and bequeath to my niece, Elizabeth S. Darby, the place known as the 'Shall place,' consisting of

about 786 acres of land in Pulaski County, State of Arkansas, towit:" (Here follows description).

In item 4 she gave two lots in the city of Little Rock, and a farm in Pulaski County known as the "Beasley place," to her niece, Mary A. Eanes, for life, with remainder over to D. F. S. Eanes, a grandnephew of the testatrix.

In item 5 she gave to her grandnephew, D. F. S. Eanes, three lots in the city of Little Rock, the property being left in trust to D. F. S. Galloway as trustee for the benefit of said D. F. S. Eanes until the latter should come of age.

In items 6 and 7, respectively, she bequeathed sums of money to a friend and to a certain church in Little Rock.

Item 8 contained the following residuary devise and bequest:

"I give, devise and bequeath to my grandnephew, David F. Shall Galloway, all the rest and residue of my estate not hereinbefore specifically devised and bequeathed, whether real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease."

After the residuary clause the will reads as follows:

"The property herein devised and bequeathed in items 4 and 5 to my grandnephew, David F. Shall Eanes, shall, in the event of his death without issue of his body him surviving, vest in fee simple in his mother, my niece, Mary A. Eanes, her heirs and assigns.

"All the property herein devised and bequeathed, unless otherwise and specifically stated, shall vest in the devisees, their heirs and assigns, in fee simple, and the property devised and bequeathed to my nieces is to be their sole and separate property and free from the control and debts of their said husbands, together with the rents and profits of the same."

By her codicil the testatrix revoked the devise to appellant, D. F. S. Galloway, as to some of the said lots given to him in the will, and devised the same to Elizabeth S. Darby in fee simple. The codicil made certain other changes not material to this controversy.

Elizabeth S. Darby died prior to the death of the testatrix, and the controversy in this suit is as to the devolution of the property devised to her in the will and codicil.

It is the contention of appellant that both of the devises

to Elizabeth S. Darby lapsed on account of her death prior to the death of the testatrix, and that that property fell within the residuary clause of the will. The chancellor decided that the devise to Mrs. Darby in the will did not lapse, but went to her children under the terms of the will; and that the devise to Mrs. Darby in the codicil lapsed, but did not fall within the residuary clause, and as to that the testatrix is deemed to have died intestate, and the property descended to her heirs at law. Appellant, D. F. S. Galloway, is not one of the heirs of the testatrix, so under the decree he gets none of the property in controversy, and he appealed to this court. W. A. Galloway, the father of D. F. S. Galloway, is one of the heirs, and is a party to this suit. He appealed from that part of the decree which holds that the property devised to Mrs. Darby in the will goes to her children.

The rule is established beyond controversy, except where changed by statute, that a legacy or devise lapses when the legatee or devisee dies before the testator. 17 Am. & Eng. Ency. of Law, p. 748, and authorities there cited.

"The liability of a testamentary gift to failure or, as it is generally termed, lapse," says Mr. Jarman, "by reason of the decease of its object in the testator's lifetime, is a necessary consequence of the ambulatory nature of wills, which, not taking effect until the death of the testator, can communicate no benefit to persons who previously die." 1 Jarman on Wills (6 ed.), p. 307.

A statute of this State changes that rule as to a legacy or a devise to a child or other descendant of the testator, and provides that it shall not lapse, but that "the property so devised or bequeathed shall vest in the surviving child or other descendant as if such devisee or legatee had survived the testator and died intestate." Kirby's Digest, § 8022.

It is conceded that the devise to Mrs. Darby in the codicil lapsed, as decided by the chancellor, by reason of her death before the death of the testatrix and the property either falls within the residuary clause of the will, if that clause is broad enough to include it, or descends to the heirs at law of the testatrix, as undisposed-of property. That question will be considered later.

It is contended on behalf of appellees that the devise of

the Shall place did not lapse, and that it was the intention of the testatrix to substitute the children of Mrs. Darby as devisees in the event of the latter's death before the death of the testatrix. This contention is founded on the general provision in the will that "all the property herein devised and bequeathed, unless otherwise and specifically stated, shall vest in the devisees, their heirs and assigns, in fee simple." The argument is, that there is presumed an intention not to permit the devise to lapse, and that the word "heirs" should be construed to mean "children," so that a line of succession should be prescribed in order to prevent lapse. There might be more reason for adopting that construction of the provision if it applied only to the devise to Mrs Darby, but it applies to all of the property devised in the will except when "otherwise and specifically stated," and the fact that the provision is a general one materially weakens the basis for construing the word "heirs" to mean "children." We do not, however, mean to say that such would be the proper construction, even if the provision applied only to the devise to Mrs. Darby. On the contrary, we are of the opinion that the words, "their heirs and assigns," were used in a technical sense to denote the character of the estate or extent of the interest to to be taken by the devisees—that they are words of limitation, not words of substitution.

The aim in construing a will is to correctly arrive at the intention of the testator, but the meaning is to be gathered from the language used.

"The question in expounding a will is not what the testator meant, but what is the meaning of his words; the use of the expression that the intention of the testator is to be the guide, unaccompanied with the constant explanation that it is to be sought in his words and a rigorous attention to them, is apt to lead the mind unconsciously to speculate upon what the testator may have been supposed to have intended to say, instead of strictly adhering to the true question, which is, what that which he has written means; the will must be expressed in writing, and that writing only is to be considered. And in construing that writing the rule is to read it in the ordinary and grammatical sense of the words, unless some obvious absurdity or some repugnancy or inconsistency with

the declared intention of the writer, to be extracted from the whole instrument, should follow from the reading of it." 2 Williams on Executors, p. 327.

Cases are to be found where the words "heir" in a will or deed was construed to mean "children." The following are among those cases: *Wyman* v. *Johnson*, 68 Ark. 369; *Shirey* v. *Clark*, 72 Ark. 539. Other examples are found in the many cases cited by counsel for appellees. But words used in a will must be construed according to the technical legal meaning unless explanatory words in the context qualify them or give them another meaning, or unless the peculiar situation under which they are used indicate an intention to use them other than in a technical sense.

In *Moody* v. *Walker*, 3 Ark. 147, this court said:

"When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed according to their legal effect; for, if this was not the case, titles to estates would be daily unsettled, to the ruin of thousands."

In *Johnson* v. *Knights of Honor*, 53 Ark. 255, in construing the meaning of the word "heirs," the court said:

"It is a technical word. When used in any legal instrument, and there is no context to explain it, as in this case, it should be understood in its legal and technical sense." To the same effect, see *Myar* v. *Snow*, 49 Ark. 129.

"Though the intention of a testator, when ascertained," says Mr. Jarman, "is implicitly obeyed, however informal the language in which it has been conveyed, yet the courts in construing that language resort to certain established rules by which particular words and expressions, standing unexplained, have obtained a different meaning, which meaning it must be confessed does not always quadrate with their popular acceptation. This results from the enactment of law, which presumes every person to be acquainted with its rules

of interpretation, and consequently to use expressions in their legal sense, *i. e.*, in the sense which has been fixed by adjudication to the same expressions occurring under analogous circumstances, a presumption, though it may sometimes have disappointed the intention of a testator, is fraught with great general convenience, for, without some acknowledged standard of interpretation it would have been impossible to rely with confidence on the operation of any will not technically expressed until it had received a judicial interpretation." 2 Jarman on Wills, p. 1651.

"In seeking for the expressed intention of the testator, his words are to receive that construction and interpretation which a long series of decisions has attached to them, unless it is very certain that they were used in a different sense." 1 Redfield on Wills, 433.

Lord Denman, in *Gallini* v. *Gallini*, 5 Barnewall & Adolphus, 621, said:

"Technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless those inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense."

Mr. Washburn has this to say on that subject:

"On the other hand, 'heirs' may have sometimes meant the same as 'child' or 'children.' That the testator intended to use it thus must be clear and something more than implication. Otherwise, it is a word of limitation." 2 Washburn on Real Property, p. 603.

Judge Sharswood, speaking for the court in *Doebler's Appeal*, 64 Pa. St. 9, said:

"While the intention of the testator, if consistent with law, is undoubtedly to be the polar star, yet we are bound to take as our guides those general rules or canons of interpretation which have been adopted and followed by those who have gone before us. It becomes no man and no court to be wise above that which is written. Security of titles requires that no mere arbitrary discretion should be exercised in conjecturing what words the testator would have used, or what form of disposition he would have adopted, had he been truly advised as to the legal effect of the words actually employed.

That would be to make a will for him, instead of construing that which he has made."

This rule of construction has been universally adopted by judges and law writers. The exceptions to it are, as above stated, found in cases where there are qualifying words in the context, which show that a technical meaning was not intended, or the peculiar circumstances under which the words were used demonstrate clearly that they were meant otherwise than in the technical sense. In the present instance there is nothing to indicate that the term, "heirs and assigns," was used otherwise than in the technical sense as words of limitation. There are numerous authorities holding that the word "heirs" in a will is a word of limitation, and not of substitution, and that the use of it, following the name of the devisee, does not prevent a lapse in the event of the latter's death before that of the testator.

Mr. Jarman has this to say on that subject:

"The doctrine applies indiscriminately to gifts with and gifts without words of limitation. Thus if a devise be made to A and his heirs   *   *   *   or to A and the heirs of his body, and A died in the lifetime of the testator, the devise absolutely lapses." 1 Jarman on Wills, p. 307.

"For the word 'heirs' in such cases," says Mr. Underhill, "gives the heirs no interest under the will, but it is merely a word of limitation, showing what interest the ancestor was to take in case he should survive the testator." 1 Underhill on Wills, p. 436.

Mr. Redfield states the same rule as follows:

"The general presumption being that these terms of succession are used to mark the extent of the interest thus intended to be conveyed to the legatee or devisee, and are therefore words of limitation merely." 2 Redfield on Wills, 160.

The same rule is stated in numerous authorities in support cited in Am. & Eng. Enc. of Law, vol. 18, p. 754. See, also, *Jackson* v. *Alsop,* 67 Conn. 249; *Maxwell* v. *Featherston,* 83 Ind. 339; *Keniston* v. *Adams,* 80 Me. 290; *Kimball* v. *Story.* 108 Mass. 382; *Wood* v. *Seaver,* 158 Mass. 411; *Hand* v. *Marcy,* 28 N. J. Eq. 59; *Kimball* v. *Chappel,* 27 Abbott, N. C. (N. Y.) 437; *In the matter of Wells,* 113 N. Y. 396; *Moss* v. *Helsley,* 60 Tex. 426.

In the case of *Watson* v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, it was urged that the use of the words, "and assigns forever," enlarged the estate, which otherwise would have been restricted by the use of the words, "bodily heirs." But this court held, following other decisions cited in the opinion, that the word "assigns," was to be construed in a technical sense, and that it only imported "that the estate may be transferred, and can not operate to enlarge the grant or defeat its express limitations."

Our conclusion, therefore, is that the devise to Mrs. Darby in the will lapsed, and that the property the same as that devised in the codicil, either fell within the residuary clause or descended to the heirs at law of the testatrix.

The remaining question relates to the devolution of the property described in the lapsed devises to Mrs. Darby. Did it fall within the clause giving the residuum of the estate to appellant, D. F. S. Galloway? The residuary clause is general in its terms, and covers all property of every kind not otherwise disposed of in the will. At common law there was a distinction made, with respect to the operation of the residuary clause of a will, between bequests of personalty and devises of real property, the English courts holding that lapsed legacies fell into the residuum, unless otherwise directed in the will itself; but that a devise of real estate did not go to the residuary devisee. This rule was based upon another distinction arbitrarily made by the English courts that, as to personalty, a will was deemed to speak from the date it took effect, *i. e.*, from the date of the testator's death, and, therefore, included property acquired by the testator after the execution of the will; but that, as to real estate, the will was deemed to speak only from the date of its execution, and did not include after-acquired property. The rule of the common law has been changed in England by the Statutes of Victoria (1837), and in most of the American States, so as to completely sweep away the old distinction between bequests of personalty and devises of real property, and make a will speak from the date of the testator's death and convey after-acquired real estate as well as personalty; and where those statutes have been put into effect the rulings have been that lapsed legacies and devises fall into the residuary clause, unless a contrary inten-

tion on the part of the testator is expressed in the will. The rule and its changes are very clearly stated in the following excerpt from the opinion of the Indiana Supreme Court:

"It is said, however, that there exists an important distinction between a void or lapsed bequest of personal estate and a void or lapsed devise of real estate, which obtains both in England and America in this, that the former falls into the residue and the latter goes to the heirs. The reason generally assigned for such distinction has been the different operations of a will upon personal and real estate. It is said that as to personal estate the will would operate upon all the personal estate held by the testator at the time of his death; while as to his real estate the testator could only devise such as he owned at the time of his will. It is certain, we think, that the reason thus given for the supposed distinction has long since ceased to exist, if it ever existed in this State. Here the testator's will of personal estate must be executed with precisely the same solemnity and formality as the will devising real estate; and there is no perceptible or practical difference in the operation of a will upon personal and upon real estate." *Holbrook* v. *McCleary*, 79 Ind. 167.

And the Supreme Court of Massachusetts, speaking through Justice Dewey, gives the following explanation of the changes in the law on the subject:

"With us all ground for any such distinction has long since been done away with. Our whole system since the enactment of the revised statute, chapter 62, section 3, has been to carry out the principle that devises of real estate and legacies of personal estates were to be placed substantially upon the same footing as to the extent of the power to devise and the formalities required in the execution of the testamentary instrument." *Thayer* v. *Wellington*, 91 Mass. 283.

For other cases announcing the same changes in the law see: *Molineaux* v. *Reynolds*, 55 N. J. Eq. 187; *Estate of Upham*, 127 Cal. 90; *Drew* v. *Wakefield*, 54 Me. 291; *Reeves* v. *Reeves*, 5 Lea (Tenn.) 644; *Youngs* v. *Youngs*, 45 N. Y. 254; *Jackson* v. *Alsop*, 67 Conn. 249; *West* v. *West*, 89 Ind. 529.

We have no statute on this subject specifically abolishing the rule of the common law as to the distinction in the operation of wills between personalty and real estate. But in the

case of *Patty* v. *Goolsby*, 51 Ark. 61, it was decided that the course of legislation here has swept away all distinctions, and that a will is deemed to speak from the date of the testator's death as to real estate as well as to personalty, and carries after-acquired property, both real and personal. In that case the court, speaking through Special Justice SOL. F. CLARK, said:

"We are not aware that the question has ever been directly before this court nor has there been any legislation in this State in terms changing or abolishing the English law on the subject. But a course of legislation was adopted at an early date wholly inconsistent with it and which has certainly swept away the principles or grounds upon which the rule has ever been understood to be predicated. * * * Considering the great changes in the policy as well as the formalities in alienating and assuring title to real estate as to what they were when the English rule on this subject originated and prevailed, we can not see, notwithstanding the common law has never been changed by any positive statute, any reason why a will should not speak from the death of the testator as to real as well as personal estate, and we are therefore of the opinion, and so hold, that, the testator being seized and possessed of said lands at the time of his death, they were included in his will and were conveyed thereby."

That decision established here a state of the law similar to that of other jurisdictions where changes in the common law on this subject have been brought about by express statutory enactments. It necessarily and logically follows, from the application of the principles there announced, that lapsed devises of real estate fall into the general residuary clause unless a contrary intention of the testator is clearly expressed in the will.

It is insisted with much earnestness that the rule announced in *Patty* v. *Goolsby*, *supra*, was mere *dictum*, and should not be binding on us now as a precedent. We can not agree with counsel that the opinion on that point is *obiter dictum*. That particular question was elaborately argued in the brief on one side and seems to have been carefully considered by the court. If the court had reached a different conclusion upon that question of law, it would have been decisive of the issue be-

tween the parties. In other words, the case could have turned entirely upon the decision of that question; therefore, it can not be regarded as *dictum* merely because it was found necessary to consider another question in consequence of the conclusion reached by the court on that question. Besides, the case was a carefully considered one, and has undoubtedly become a rule of property in this State. We decline to overrule it or to discredit it.

Now, turning to the question of lapsed legacies at common law, which must now be considered as the established rule also as to devises of real estate, we find little, if any, conflict in the authorities.

"A residuary gift of personal estate," says Mr. Jarman, "carries not only everything not in terms disposed of but everything that in any event turns out not to be well disposed of. A presumption raises for the residuary legatee as against every one except the particular legatee, for the testator is supposed to give his personalty away from the former only for the sake of the latter. It has been said that to take a bequest of the residue out of the general rule very special words are required, and accordingly a residuary bequest of property 'not specifically given' following various specific and general legacies will include lapsed specific legacies." 2 Jarman on Wills, p. 716.

The rule sustained by a long list of adjudged cases is thus stated by the cyclopedists of the law:

"The residuary clause passes all the property of the testator that is not otherwise disposed of by the will, unless the words used show an intention to exclude from the operation of the residuary clause some part of the estate, it being the rule that a residuary clause will be liberally construed to prevent intestacy. This includes property acquired after the will was made if it appears that the testator intended his will to operate on after-acquired property, and legacies and devises that lapse or otherwise fail for any reason." 18 Am. & Eng. Ency. of Law, p. 724.

In *Lovering* v. *Lovering*, 129 Mass, 97, the court said:

"A general residuary gift carries all property which is not otherwise disposed of by the will, and includes lapsed legacies and all void legacies. In this case the residuary

gift was 'all the rest, residue and remainder of my estate, real and personal, of every nature and description.' The fact that he specifies certain remainders and reversions as included in the general description does not limit or narrow it."

*In the Matter of L'Hommedieu,* 32 Hun (N. Y.) 10, the following statement of the rule is given:

"It is a settled rule of construction that a residuary clause carries all which is not legally disposed of by the will, unless a contrary intention is manifest by the will itself. Such an intention can not be deduced from the mere absence of words or that the testator failed to provide for the contingency upon which the lapse was occasioned. A testator is supposed to have given away from the residuary legatee only for the sake of the particular legatee." Authorities need not be multiplied on this point.

It is argued that the language of the will prevents the operation of the residuary clause as a general one, and evinces a specific intention on the part of the testatrix not to include lapsed legacies. Counsel invoke a strict construction of the language of the residuary clause on the ground that a presumption should not be indulged of an intention on the part of the testator to cut the heirs off from the lapsed devises, unless the intention is made clear, by the language of the will. While it is sometimes said that an intention to disinherit lawful heirs is not to be presumed, in the absence of clear and explicit language to that effect, yet there are other presumptions not to be overlooked. In the construction of wills there is always a presumption against partial intestacy unless such an intention clearly appears from the language used in the instrument. *Booe* v. *Vinson,* 104 Ark. 439; 2 Redfield on Wills, 116.

The presumption against intended intestacy leads to a liberal, rather than to a restrictive, construction of the residuary clause in the will, in order to prevent partial intestacy.

"Where the language of the residuary clause is ambiguous," says the New York court, "the leaning of the courts is in favor of a broad rather than a restricted construction. It prevents intestacy, which it is reasonable to suppose testators do not contemplate; and if the mind is left in doubt upon the whole will as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet

the testamentary purpose, because such a clause is usually inserted to provide for contingencies or lapses, and to cover whatever is left, after satisfying specific and special purposes of the testator manifested in the other clauses of the will." *Lamb* v. *Lamb*, 131 N. Y. 237.

This presumption is greatly strengthened by the language of the will and of its provisions, taken as a whole. The emphatic language used evinces a clear intention to cover all of the testator's property. The preamble reads thus:

"As to my worldly estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, towit:"

In 1 Underhill on Wills, § 464, this pertinent statement of the law on the subject is found:

"The rule is that the testator's intention is to be ascertained from the whole will. If, therefore, the testator in the introduction expresses an intention of disposing of all of his estate, as when he says 'I give and devise all of my worldly goods,' it should be considered. The presumption arises that, having the disposition of his whole estate in view, he did not intend to die intestate as to any part of it. If his subsequent language may be construed in either of two ways, by one of which a complete disposition will be made of his whole estate, and by the other only a partial disposition will be made, resulting in a partial intestacy, the introductory statement pointing to a complete disposition ought to be considered, and that sense adopted which will result in a di position of the whole estate. Hence it follows that language which in a general or residuary clause may not alone be sufficiently conclusive to dispose of all the property of the testator may have its meaning enlarged to correspond with an intention shown in the introductory clause."

Mr. Redfield states the same conclusion as follows:

"The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy unless absolutely forced upon them. This has been done partly as a rule of policy perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator, for the fact of making the will raises a very

strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of the will. Hence, where a general residuary bequest was accompanied with expressions affording a more limited construction and pointed only to a particular surplus beyond the properties specifically mentioned, it was nevertheless held to pass the residuum of his property at the time of his decease, as well that which he held at the date of his will as that afterwards acquired. Lord Eldon here said that it was the general rule in regard to residuary bequests to avoid partial intestacy, and that it required very specific words to confine a residuary bequest to the property belonging to the testator at the date of his will." 2 Redfield on Wills, p. 116.

The words of the residuary clause, "not hereinbefore specifically devised," do not overcome the presumed intention to include lapsed devises. That phrase must be construed with reference to the time that the will speaks, and, when so considered, it refers to valid devises or those which finally take effect under the will, but does not exclude from the residuum lapsed devises or those which are void when the will takes effect.

"In all these cases of lapsed or void legacies," says the Massachusetts court, "or a legacy that fails for want of using proper language to create the same, or to designate the legatee, all of which are uniformly held to pass to the residuary devisee, the testator had no purpose in his mind at the time of executing his will to pass such an estate to the residuary devisee. 'It is not necessary that the testator's mind should be active in including it.' *Goodright* v. *Downshire*, 2 B. & P. 600. The contrary intention of the testator, spoken of in the books as that which will prevent such legacy going to the residuary devisee, is something more than the fact that the testator supposed that he had made a valid legacy to some one of a portion of his estate, but which the court held void and inoperative." *Thayer* v. *Wellington, supra.*

In the following cases use of the same words in substance was held not to take lapsed devises out of the operation of the residuary clause: *Roberts* v. *Cook,* 16 Ves. Jr. 451; *Brown* v. *Higgs,* 4 Ves. Jr. 709; In re *L'Hommedieu,* 32 Hun (N. Y.)

10; *Tindall's Executors* v. *Tindall,* 24 N. J. Eq. 512; *Riker* v. *Cornwell,* 113 N. Y. 115.

The conclusion is inevitable, if the principles above announced are to be considered as controlling, that the property included in the lapsed devises to Mrs. Darby fell within the genera' residuary clause of the will and passed to appellant, D. F. S. Galloway.

Objection is made to the jurisdiction of the chancery court upon the original complaint of appellant; but, inasmuch as the allegations of the cross complaint are confessedly sufficient to give the court jurisdiction, and having taken jurisdiction for any purpose, the court will completely settle the rights of the parties in the subject-matter of the controversy.

The decree is therefore reversed, and the cause remanded with directions to dismiss the cross complaint of appellees and to quiet the title of appellant to all the property in controversy.