EARNEST SMITH ET AL *v.* VAN PARKS GILES ET AL

73-6                                               494 S.W. 2d 108

Opinion delivered April 30, 1973
[Rehearing denied June 4, 1973.]

*Mays & Landers,* for appellant.

*Shackleford & Shackleford,* for appellees.

CONLEY BYRD, Justice. Involved here is the construction of the will of Vera Murphy which provides:

> "...This bequest of the five acres to my niece, Ruby Marie Giles, is to be for her lifetime, to use in any way she may see fit, but not to sell or dispose of the same, and the remainder shall go to her heirs..."

The trial court ruled that Ruby Marie Giles took only a life estate. Appellants Mr. & Mrs. Earnest Smith as purchasers from Ruby Marie Giles contend that under the rule in Shelley's Case, Ruby Marie Giles took the fee. Appellees Van Parks Giles and Rosemary Downs, the children and heirs at law of Ruby Marie Giles contend the Rule in Shelley's Case is not applicable because of the restraint against alienation of the life estate and because the term "heirs" is used in its non-technical sense. We agree with the appellants.

The rule in Shelley's Case is a rule of property and not a rule of construction. The history and reasons for its application are set forth in *Hardage* v. *Stroope,* 58 Ark. 303, 24 S.W. 490 (1893). It was pointed out that whenever there is a limitation to a man which, if it stood alone, would convey to him a particular estate of freehold, followed by a limitation to his heirs (or equivalent expressions), either immediately, or after the interposition of one or more particular estates, the apparent gift to the heirs, according to the rule in Shelley's Case, is to be construed as a limitation of the estate of the ancestor, and not as a gift to his heirs. The theory was that, in cases which come within the rule, the heirs take by descent from the ancestor, and they cannot do so unless the whole estate is united and vests as an executed estate of inheritance in the ancestor.

In discussing the scope and extent of the rule in the *Hardage* case, we quoted approvingly from *Doebler's Appeal*, 64 Pa. St 9, as follows:

> "...The rule in Shelley's Case is never a means of discovering the intention. It is applicable only after that has been discovered. It is then an unbending rule of law, originally springing from the principle of the feudal system, and though the original reason of it, the preservation of the rights of the lord to his relief, primer seisin, wardship and marriage, has passed away, it is still maintained as a part of the system of real property which is based on feudalism and as a rule of policy. It declares inexorably that where the ancestor takes a preceding freehold by the same instrument, a remainder shall not be limited to the heirs, *qua* heirs, as purchasers. If given as an immediate remainder after the freehold, it shall vest as an executed estate of inheritance in the ancestor; if immediately after some other interposed estate, then it shall vest in him as a remainder. Wherever this is so, it is not possible for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention. That is a subordinate intent which is inconsistent with, and must therefore be sacrificed to, the paramount one. Even if he expressly provides that the rule shall not apply—that the ancestor shall be tenant for life only and impeachable for waste—if he interpose an estate in trustees to support contingent remainders—or, as in this will, declare in so many words that 'he shall in nowise sell or alienate, as it is intended that he shall have a life interest only,' it will be all ineffectual to prevent the operation of the rule. ..."

We find this language to be controlling of the issues here presented.

The cases of *Letzkus* v. *Nothwang*, 170 Ark. 403, 279 S.W. 1006 (1926) and *First National Bank of Ft. Smith* v. *Marre*, 183 Ark. 699, 38 S.W. 2d 14 (1931), have held restraints on alienation similar to that here involved, unenforceable and void for repugnancy.

We find no merit to the contention that the term "heirs" is used in its non-technical sense to mean children. See *Galloway* v. *Darby*, 105 Ark. 558, 151 S.W. 1014 (1912).

Reversed and remanded.